Maria Theresa GONZALES, Appellant,

v.

STATE of Texas, Appellee.

No. 04–83–00595–CR.

Court of Appeals of Texas, San Antonio.

Jan. 9, 1985.

James A. Mayer, San Antonio, for appellant.

Sam D. Millsap, Jr., Crim. Dist. Atty., Sid Harle, Margaret M. Embry, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a conviction for passing a forged check. Imposition of a two year sentence was suspended and appellant placed on probation for a period of three years.

In two grounds of error appellant challenges the sufficiency of the evidence to sustain her conviction. The first ground of error alleges the evidence is insufficient to show she acted with the intent to defraud and harm another. The second ground alleges the evidence fails to establish that she knew the check was forged as alleged in the indictment.

Appellant waived her right to a jury and trial was before the court. Appellant entered a plea of "not guilty." Appellant agreed to allow the State to introduce evidence by written stipulations. A handwritten portion of the stipulations introduced by the State recites, in pertinent part, the following:

> ... I am the same Maria Theresa Gonzales who passed check No. 512 on the account of A.L. Plumbing Co. on April 18, 1983, in the amount of $256.89 ... and the owner of the checks, Arnulfo Lopez, did not authorize or consent, or execute the said check being written, and that said check was altered, executed, authenticated and completed so that it purported to be the act of another, and further I stipulate that I ... passed a check No. 488, on the same account in the amount of $243.57 ... and that the owner, Arnulfo Lopez did not authorize said check ... and the check had been altered, executed, and completed so that it purported to be the act of another who did not authorize said act ... and both checks were forgeries.

Appellant specifically stipulated to the testimony of four witnesses and to any other witnesses that might be called by the State. *See O'Conner v. State*, 401 S.W.2d 237 (Tex.Crim.App.1966). Appellant further stipulated that the witnesses' statements attached to the stipulations were true and correct.

The witnesses' statements include one from the cashier wherein he, Stephen Dunk, states that appellant presented the check to him for cashing on the date alleged. The check was made payable to appellant, signed by Arnulfo Lopez of A.L.

Plumbing and fits the description of the check set out in the indictment. Dunk's statement further indicates that he ran a check and found that this check was listed as stolen. Dunk had two other checks in his office from A.L. Plumbing that were "fored" (sic).

The statement from Arnulfo Lopez asserts that the signature on the check is not his, nor authorized by him and is in fact a forgery of his signature. Lopez further states that he does not know appellant.

■ Included in the stipulations received in evidence as part of the State's case is a computerized print-out of the arresting officer's report. In this report, the officer states that when he questioned appellant about the check at the scene, the appellant stated that she worked for the company and that the check was her payroll check. Thus, in effect, appellant admitted she passed the check but believed she was entitled to the proceeds because of the work she had performed. Where the State puts in evidence a statement or admission of the accused party which exculpates the accused, and does not directly or indirectly disprove them, the accused is entitled to an acquittal. *See Palafox v. State,* 608 S.W.2d 177 (Tex.Crim.App.1979). Nowhere in the State's evidence introduced is there anything which refutes appellant's exculpatory statement to the arresting officer.

After the overruling of her motion for instructed verdict, which was based upon the same grounds as are now urged on appeal, appellant took the stand in her own behalf.

Appellant testified that around the time of the incident she had a part-time job at a Target store. She wanted an additional job and asked a friend, Elida Lambaria, about work. She was informed by Lambaria that a job with A.L. Plumbing, where Lambaria worked, was open. She stated she, along with three other women, began working for the company under a supervisor named Johnny. She stated she signed a contract which was retained by Johnny. She stated that she would receive a call when plumbing work was needed and that Johnny would pick up her and the other woman in his car and take them to the job sites. After working about two weeks she received her first payroll check which she had no difficulty in cashing. This check, drawn on A.L. Plumbing, appears to be the one also introduced by the State and stipulated by appellant in the amount of $243.57. After doing further work, she received the check which is the subject of the indictment. Appellant, testified that Johnny always left her's and the other women's checks at Lambaria's house for them and she never had to go to the main A.L. Plumbing office for anything.

After receiving their paychecks on this occasion, appellant and the three women went to Handy Andy to cash them. Appellant presented her check and identification to the cashier, Stephen Dunk. Dunk informed her she would have to wait while he ran it through "Check Stop." After twenty or twenty-five minutes, appellant asked Dunk if there was a problem and he said no. While there, one of the other women attempted to cash her payroll check but was told to wait. The four women waited by the door. When appellant started to smoke a cigarette, the four started outside to smoke, a police officer arrived and told them all to go back inside. She stated that at the time she gave the cashier this particular check she did not know it was forged. She believed the check to be in payment to her for her recent work. Appellant stated she had no reason to suspect there would be a problem with this check because she did not have any problem cashing the first check.

On cross-examination, appellant admitted that she did not know Johnny's last name. Other than that the job sites were on the northside of town, appellant could not recall the names of the subdivision or builder associated with the job sites. Appellant also admitted that two of the other women, Elida Lambaria and another named Ester had been charged with passing checks. Appellant stated that no charges were filed against Johnny.

One of the offense reports indicate that the check in question was reported stolen in a burglary which occurred on March 27, 1983. Appellant presented the check to the cashier on April 18, 1983.

In pertinent part, the indictment charged appellant with forgery, as follows:

... and on or about the 18TH day of APRIL, A.D., 1983, MARIA THERESA GONZALES, hereinafter called defendant, did then and there knowingly and intentionally with intent to defraud and harm another, PASS TO STEPHEN DUNK a WRITING, NAMELY: A CHECK that had been MADE, ALTERED, EXECUTED, AUTHENTICATED AND COMPLETED so that it purported to be the act of another who did not authorize the act, and the said defendant knew said CHECK was forged and which said CHECK is to the tenor following:

[A photocopy of the face of the check is attached to the indictment]

■ In *Tatum v. State*, 649 S.W.2d 822, 823 (Tex.App.—San Antonio 1983, no pet.), this court stated: "Because the gist of the offense of forgery is the 'intent to defraud or harm,' it becomes necessary in a 'passing' case for the State to prove the defendant had knowledge the instrument was forged." We further stated that this proof may be made by circumstantial evidence. *Id.* at 823. Yet, whether the evidence be direct or circumstantial, the State must prove facts from which such an intent to defraud or harm is deducible beyond a reasonable doubt and, in the absence of such proof, a conviction will not be justified. *See Stuebgen v. State*, 547 S.W.2d 29 (Tex. Crim.App.1977).

A careful reading of the handwritten stipulation does not reveal that AT THE TIME SHE PASSED THE CHECK(S) appellant had the intent to defraud or harm or knew that the check(s) were forged. At best, the handwritten stipulation acknowledges that appellant is presently agreeing that both checks are forgeries. This is consistent with appellant's defensive posture both at the time of arrest and at trial.

On each occasion appellant stated she believed the check to be her pay for work performed for A.L. Plumbing. Appellant specifically denied knowing the check was a forgery when she presented it to the cashier.

Appellant was listed as payee and there is no evidence in the record to show that appellant falsely identified herself to the cashier. There is no evidence that appellant forged Arnulfo Lopez' signature on the check. There is no evidence connecting appellant to the burglary which resulted in the checks being stolen from the company. There is no evidence appellant attempted to flee the scene. Appellant made no statement from which it could be inferred that she knew the instrument was forged.

■ In the instant case, while the State did prove that the instrument was forged, the State failed to show by any evidence beyond a reasonable doubt that appellant knew the instrument was forged or that she had the intent to defraud or harm. *See and compare Crittenden v. State*, 671 S.W.2d 527 (Tex.Crim.App.1984); *Pfleging v. State*, 572 S.W.2d 517 (Tex.Crim.App. 1978); and *Stuebgen v. State, supra.*

The evidence being insufficient to sustain the conviction, the judgment of the trial court is reversed and the cause remanded to the trial court with instructions to enter a judgment of acquittal. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

CANTU, Justice, concurring.

I concur in the result, but I disassociate myself from that portion of the opinion which relies on *O'Conner v. State*, 401 S.W.2d 237 (Tex.Crim.App.1966) for authority to consider as evidence those documents attached to the *"Written Waiver and Consent to Stipulation of Testimony and Stipulations"* which constitute statements or reports of witnesses whose names are not specifically included in the waiver portion of the instrument.

The majority opinion needlessly discusses, I believe, evidence not validly before the trial court or before this Court in arriving at its conclusion. As I see it the probative evidence in the case is much weaker than the majority assumes inasmuch as it consists solely of two witness' statements and the handwritten stipulation alluded to in the majority opinion.

In support of my position I refer to the *Written Waiver and Consent to Stipulation of Testimony and Stipulations* and especially those portions which read:

Now comes the defendant ... and understanding that he has the right to have any witness against him appear in Court, to be confronted by such witness and the right to cross-examine such witness through counsel, deliberately and knowingly agrees and consents in writing to waive the appearance, confrontation and cross-examination of witnesses against him in said cause, to-wit:

ARNULFO LOPEZ
STEPHEN DUNK
HECTOR GARZA
RENE ARIZOLA

As well as any other witnesses that might be called by the State.

\* \* \* \* \* \*

Said defendant in person together with his counsel and the attorney representing the State of Texas further agrees and consents in writing in open court to the introduction of testimony on behalf of the State by affidavits, written statements of witnesses, and any other documentary evidence that may be offered in support of any judgment that may be entered in said cause, all of which are attached hereto, marked Exhibit Nos. SX–1 (1–14) inclusive, and made a part hereof ...

The exhibit then contains the statements of Stephen Dunk, and Arnulfo Lopez. Also included are xerographic copies of two checks, one forming the basis of the instant indictment and another indicating a possible extraneous offense. There follows the inclusion of numerous police reports prepared by several police officers whose names are not included within the waiver of confrontation and cross-examination portion of the stipulations.

Not included in the exhibit although confrontation and cross-examination were waived as to them are statements of the witnesses Hector Garza and Rene Arizola.

The constitutional right of an accused to confrontation and the right to cross-examine witnesses against him is a right which may be waived. *Griffith v. State*, 391 S.W.2d 428 (Tex.Crim.App.1965). But if waiver of a constitutional right is to have any meaning, it must remain "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314, 317 (1966).

By specifically naming those witnesses appellant was willing to waive confrontation and cross-examination of, appellant, I do not believe, was giving the State Carte Blance to attach the statements of every other potential witness which could be dragged up. This is especially true in a case tried upon a plea of not guilty and which is not purely one tried upon stipulated proof.

In *O'Conner v. State, supra* and *O'Conner v. State*, 401 S.W.2d 240 (Tex.Crim.App.1966), cases involving guilty pleas, both opinions by Commissioner Dice, the issue was not one of identifying the witness whose confrontation and cross-examination were the subject of waiver. Rather, the narrow question presented was whether the State could substitute in the absence of an objection, a narrative statement by the prosecutor of what the evidence would be for the prior testimony of the witnesses which appellant agreed could be offered.

I find nothing in either case authorizing the majority to consider statements of witnesses whose confrontation and cross-examination have not been waived constitutionally and pursuant to TEX.CODE CRIM.

PROC.ANN. art. 1.15. Furthermore, both *O'Conner* cases, insofar as they permit the State to substitute on the manner of stipulation agreed upon by the parties are correctly decided only if failure to object at the trial level constitutes a waiver by silence.

In all other respects I agree that the State's proof falls short of that required for conviction.