After midnight on August 9, 1998, Officer Minarchek of the Massillon Police Department was dispatched based on reports that shots had been fired, and someone was screaming. After arriving at the neighborhood in question, the officer found appellant Lamar Buchannan, who was fifteen years old, lying on the ground behind the house, screaming for help. The officer told appellant to put his hands up, as the officer wanted to make sure for his own safety that appellant did not shoot him. He then asked appellant what happened. Appellant answered that he shot himself. The officer then asked appellant if he still had the gun on him. After ascertaining the nature of appellant's injuries and making sure the gun was not within his reach, Officer Minarchek called the paramedics from his portable radio.
Officer Minarchek then read appellant his Miranda rights, and asked him where the gun was located. Appellant pointed to the bushes, where the gun was retrieved. He was not placed under arrest at the time.
Within one to two minutes, paramedics arrived on the scene, and transported appellant to the hospital. Officer Minarchek spoke further with appellant at the hospital shortly thereafter, and ascertained how he had received the gun. From the statement, the police discovered the gun had been stolen.
Appellant was charged with delinquency by reason of grand theft of a firearm, delinquency by reason of receiving stolen property, and unruly by one count of violating curfew. Appellant moved to suppress the statements given to the police. After an evidentiary hearing, a magistrate recommended denying the motion to suppress, on the basis that appellant was in not custody. An adjudicatory hearing was held immediately thereafter, and appellant was found delinquent by one count of grand theft and one count of stolen property, and unruly by one count of curfew violation. He was sentenced to a six month commitment to the Department of Youth Services.
An objection to the magistrate's decision on the suppression motion was filed. Following arguments on the objection, the court made findings of fact and found that the statement which led to the discovery of the gun was given to the police after appellant had been given Miranda warnings. The court further found that the public safety exception justified questioning considering the location of the gun, regardless of whetherMiranda warnings were given. The court found that as to the statement given at the hospital, appellant had been givenMiranda warnings, and knowingly waived his rights. The court further adopted and incorporated the decision of the magistrate.
Appellant assigns one error on appeal:
ASSIGNMENT OF ERROR
 I. THE MAGISTRATE AND TRIAL COURT JUDGE ERRED IN NOT SUPPRESSING ALL STATEMENTS AND EVIDENCE OBTAINED BY MASSILLON POLICE OFFICERS BECAUSE A CUSTODIAL INTERROGATION OCCURRED ON AUGUST 9, 1998, HOWEVER, LAMAR BUCHANAN DID NOT VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVE HIS RIGHT TO REMAIN SILENT.
When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way, and subjected to questioning, the privilege against self incrimination is jeopardized and procedural safeguards must be employed to protect the privilege. Miranda v. Arizona (1966),384 U.S. 436, 478. Before the officers are required to inform the suspect of his rights, the suspect must be in custody, and an interrogation must occur. Id. In determining whether or not a suspect is in custody, the court must look to whether a reasonable person under the circumstances would think that he is under arrest, and not free to leave. Berkemer v. McCarty
(1984), 468 U.S. 420. Interrogation includes any words or actions on part of the police that police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis (1980), 446 U.S. 291, 301. The constitutional privilege against self-incrimination is applicable in cases involving juveniles, the same as in cases involving adults. In Re: Gault (1967), 384 U.S. 1, 55.
According to the facts as found by the trial court, Officer Minarchek told Lamar to put his hands up, to make sure for his own safety that appellant did not shoot him. Officer Minarchek then asked appellant what happened, and appellant answered he had shot himself. The officer then asked Lamar if he still had the gun on him.
The initial questions asked by the officer were not reasonably likely to elicit an incriminating response, and therefore did not rise to the level of an interrogation. At this point, appellant appears to be a victim, rather than a suspect. The detective is engaging in conversation with appellant to ascertain what happened, and where the gun might be, in order to protect the safety of the officer and appellant. At this point, the officer had no reason to suspect appellant of any wrong doing.
Even if the question as to whether appellant still had the gun on him could be perceived to be an interrogation, and assuming arguendo appellant felt he was not free to leave, the question was justified pursuant to the public safety exception to the requirement that Miranda warnings be given. In situations in which the facts indicate to an officer that a gun is loose in a public area, which is subject to intrusion, the public safety concerns involved justify an easing of theMiranda requirements. New York v. Quarles (1984), 467 U.S. 649. When the officer asked appellant if the gun was still on his person, the officer was interested in protecting himself, appellant, and anyone else who happened to be in the area. According to the officer's testimony, he was concerned about the whereabouts of the gun because there were other kids in the area. Tr. 11.
According to the findings of fact as found by the court, the officer then called the paramedics from his portable radio, and then gave appellant his warnings pursuant to Miranda. After giving appellant Miranda warnings, the officer then asked appellant where the gun was located. As noted by the court, the statement that led to the finding of the stolen gun was given after Miranda warnings were given to appellant.
Appellant argues that he did not voluntarily waive hisMiranda rights, and that the statement was coerced. He argues that the officer refused to give him medical attention until he told him where the gun was located. The court, in its findings of fact, specifically found that the officer called paramedics from his portable radio before Mirandizing appellant and asking him where the gun was located. The court also adopted and incorporated the report of the magistrate, in which the magistrate specifically found the testimony of the police officer credible. In addition, although appellant initially testified on direct examination at the suppression hearing that he felt he would not get medical attention until he told the officer where the gun was located, he stated on cross-examination that after the officer called the ambulance, he asked appellant where the gun was located. Tr. 45.
Appellant also argues that due to his physical state at the time, he was unable to intelligently waive his Miranda warning. However, the record reflected that appellant was fifteen years old, and of average intelligence. He had been arrested prior to the incident in question. Although he was in pain, the wound was to his leg, and he was able to carry on an intelligent conversation with the detective. He never lost consciousness at the scene, nor did he ever close his eyes. In addition, at the suppression hearing he was able to recall details concerning the crime scene, such as going to the hospital in an ambulance, what hospital he was taken to, whether the doctor that treated him was male or female, having blankets placed on him, and being carried to the ambulance on a stretcher.
We next turn to the issue of suppression of the statements made to Officer Minarchek at the hospital. The court found that the incriminating statement given at the hospital by appellant was given after Miranda warnings were given to him, and at a point in time when he was receiving medical attention. The court concluded that even if appellant believed he was in custody, he knowingly and voluntarily gave his statement and waived his rights at the time he was in the hospital.
Officer Minarchek testified that although he did not personally re-Mirandize appellant at the hospital, his associate officers indicated to him that they had read hisMiranda warnings a second time. Appellant argues that this evidence is insufficient to establish that he validly waived his rights a second time. However, the failure to re-Mirandize
a suspect prior to each interrogation session does not necessarily result in suppression of the resulting statement.State v. Cooey (1989), 46 Ohio St.3d 20. Considering the totality of the circumstances, the initial warnings may not have become so stale as to fail to protect the defendant from the coerciveness of subsequent custodial interrogations. Id. In determining whether the initial warnings have become so stale as to dilute their effectiveness, the circumstances to consider include the length of time between the first warnings and the subsequent interrogation, whether the warnings were given at the same or different places, whether the subsequent interrogation was conducted by the same or different officers, the extent to which the subsequent statement differed from the previous statements, and the apparent intellectual and emotional state of the suspect. State v. Roberts (1987),32 Ohio St.3d 225, 232.
In the instant case, Officer Minarchek Mirandized appellant at the crime scene, and reinitiated the contact at Massillon Community Hospital. The same officer spoke with appellant on both occasions. According to the officer's testimony, the paramedics arrived within a minute or two of the time he radioed for them. He then traveled to Massillon Community Hospital, with approximately five minutes elapsing. He spoke with the doctor upon arriving at the hospital, who informed the officer that appellant was okay. He then immediately went to speak with appellant. In addition, he told appellant at the scene that he would be talking to him later at the hospital. Under the totality of the circumstances, appellant's initial warning had not become stale, and was sufficient to protect him during the subsequent questioning shortly thereafter at the hospital.
Appellant also argues that due to his state at the hospital, he was not able to voluntarily give a statement. He argues that he was confused from a shot given to him at the hospital, and was shaking. However, the officer testified that he spoke in complete sentences, and appeared to be lucid. There therefore was sufficient evidence to support the court's finding that at the hospital, appellant voluntarily waived his rights.
The assignment of error is overruled.
The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.
By Gwin, J., Wise, P.J., and Hoffman J., concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES