OPINION
{¶ 1} Defendant-appellant Paul Bacharowski appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of patient abuse in violation of R.C. 2903.34(A)(1). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 26, 2001, the Stark County Grand Jury indicted appellant on one count of patient abuse in violation of R.C. 2903.34(A)(1), a felony of the fourth degree. At his arraignment on October 19, 2001, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on February 11, 2002. Appellant represented himself at trial. The following evidence was adduced at trial.
 {¶ 4} Appellant was employed as a nurse at Smith Nursing Home. In February of 2001, Queenie Bond, who was approximately 83 years old as of the date of the trial, was a resident of the home. Although Bond was physically in good shape, she mentally was "very unstable" and had been diagnosed with Alzheimer's dementia. Transcript at 101, 145. Because of her dementia, Bond often wandered towards Door 5 of the nursing home looking for her parents and trying to get out. For such reason, Bond wore a bracelet that caused the door to automatically lock when she came within 15 feet of the same. However, after approximately fifteen seconds, the door could be pushed open.
 {¶ 5} On February 10, 2001, Jennie Toles, a nursing assistant who provides the residents at the nursing home with personal care, saw Bond standing near Door 5 trying to get out. Toles observed appellant walk up to Bond and hit her "pretty hard" on the right side of her buttock. Transcript at 107. According to Toles, appellant then grabbed Bond by the shoulders and "turned her around and he shoved her up the hallway." Transcript at 106. Toles later told the agency nurse who was at the nursing home at the time what had happened. When the two looked at Bond's buttock, they observed "redness on her right buttock." Transcript at 110. Toles testified that she had not observed the redness the day before when giving Bond her shower.
 {¶ 6} Jennifer DiMattio, a licensed practical nurse with Absolute Healthcare Service, a nursing agency, testified that she was working the afternoon shift at Smith Nursing Home on February 10, 2001. At approximately 8:00 p.m. on the evening of February 10, 2001, DiMattio was at the nursing station when she became aware of some commotion near Door 5. After the alarm for Door 5 went off, DiMattio heard appellant, who she testified sounded "angry". Transcript at 131. As she came out of the nurse's station, DiMattio "saw him [appellant] coming up the hallway with Queenie in front of him sort of like scolding her, [a]nd shoving her toward the TV room, " Transcript at 131. DiMattio saw appellant push Bond from the back five or six times using his hand. After Toles motioned her to come over, Dimattio and Toles had a conversation about the incident. When the administrator's wife called, DiMattio told her what had happened.
 {¶ 7} Linda Roberts, a registered nurse and the Director of Nursing at Smith Nursing Home, conducted an investigation into the assault on Bond. When she looked to see if there were any marks on Bond, Roberts observed a "dark area on her buttock." Transcript at 150. As part of her investigation, Roberts called appellant and asked him if he would provide her with a written statement as to what had happened. In his statement, appellant admitted that he had hit or slapped Bond on the buttocks. Appellant was then fired for assault.
 {¶ 8} At trial, Kristi Colliver, a special agent with the Healthcare Fraud Division of the Ohio Attorney General's Office, testified that she was assigned to conduct an investigation of the incident involving Bond. Colliver interviewed Roberts, Toles and DiMattio and also had an opportunity to speak with appellant on May 1, 2001. During Colliver's interview with appellant, appellant admitted slapping Bond on the buttock one time and told her that he "felt like it was the right thing to do at the time." Transcript at 179. The following testimony was adduced when Colliver was asked whether appellant indicated what he did after slapping Bond on the buttock:
 {¶ 9} "A. Ah, he stated that he physically moved her, by putting his hand on her back, up the hallway to the TV room. He used certain words as physically moving her or guiding her in order to get her to the TV room.
 {¶ 10} "Q. Did you question him about that?
 {¶ 11} "A. I asked him if he repeatedly shoved her up the hallway, as the allegation had indicated, and he did not respond. He said that he felt he used sufficient force to move her up the hallway or guide her up the hallway, but he denied using excessive force at any time." Transcript at 179.
 {¶ 12} Appellant, during his interview with Colliver, indicated that he "[q]uite possibly" had a problem with anger or frustration and that he did not have any other means of redirecting Bond other than slapping her. Transcript at 180, 181.
 {¶ 13} While appellant, who testified at trial in his own defense, admitted to slapping Bond once on the buttocks, he denied shoving Bond down the hallway. Rather, appellant testified that he guided Bond down the hallway by holding his hand around her. Appellant also denied telling Colliver that he had no other method to redirect Bond other than slapping her.
 {¶ 14} At the conclusion of the evidence and the end of deliberations, the jury, on February 11, 2002, found appellant guilty of patient abuse in violation of R.C. 2903.34(A)(1). As memorialized in a Judgment Entry filed on March 28, 2002, the trial court sentenced appellant to three years of community control under specified terms and conditions.
 {¶ 15} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 16} "I. APPELLANT WAS DENIED HIS RIGHT TO ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 17} "II. APPELLANT'S CONVICTION FOR PATIENT ABUSE WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 18} Appellant, in his first assignment of error, argues that he was denied his Constitutional right to assistance of counsel. Appellant specifically contends that the trial court erred in determining that appellant was not indigent and, therefore, was not entitled to court-appointed counsel. Appellant further maintains, in the alternative, that appellant's waiver of counsel was invalid.
 {¶ 19} "The constitutionally protected right to the assistance of counsel is absolute." State v. Tymcio (1975) 42 Ohio St.2d 39, 43,325 N.E.2d 556, citing Argersinger v. Hamlin (1972) 407 U.S. 25, 37,92 S.Ct. 2006, 32 L.Ed.2d 530. In Tymcio, supra, the Ohio Supreme Court recognized that the trial court in a criminal case, whether involving a serious offense or a minor offense, has a duty to inquire fully into the circumstances relating to an accused's claimed inability to obtain counsel and his consequent need for assistance from the trial court in employing counsel or for the assistance of court appointed counsel. "To make the right to the assistance of court-appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so." Tymcio, supra. at 45. As the Ohio Supreme Court noted in Tymcio, many factors, financial and otherwise, may "impinge upon a defendant's inability to obtain counsel, factors which may differ greatly from case to case." Id. at 44. There is a presumption against the waiver of a constitutional right such as the right to counsel. See Brookhart v.Janis (1966), 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314.
 {¶ 20} In the case sub judice, the trial court determined that appellant, who has two years of college, was not entitled to court-appointed counsel. Prior to the start of trial on February 11, 2002, the trial court indicated on the record that a representative from the Public Defender's Office had interviewed appellant and found that appellant's "economic status was such that they could not represent" appellant. Transcript at 7. Appellant indicated to the trial court that his economic status had not changed since his interview by the Public Defender in the fall of 2001. Appellant, who told the court that he was "[n]ot exactly indigent but did not "have money to pay a lawyer", stated to the trial court that he performed "some day labor here and there" and that he received $500.00 a month in income from rental property that he owned. Transcript at 7, 12. According to appellant, the rental property had a value of $35,000.00. Appellant further informed the trial court that he had $700.00 in the bank, that he did not receive unemployment benefits, that he had a young daughter (age 6) at home and that his wife was not employed due to an injury. After the trial court stated that it wanted to refer the matter again to the Public Defender's Office for review to determine if appellant's economic status would prohibit the appointment of counsel, appellant stated as follows: "It sure will, because, in actuality, I own about — two properties, combined total hundred thousand dollars." Transcript at 21.[1] After reviewing the appellant's financial situation again, the Public Defender's Office once again determined that appellant was not eligible for representation by the Public Defender's Office since he did not meet their financial requirements for appointment.
 {¶ 21} Clearly, in the case sub judice, the trial court did inquire on the record as to appellant's circumstances, financial and otherwise, before finding that appellant was not indigent and, therefore, was not eligible for court-appointed counsel. Upon our review of the record, we find that the trial court's inquiry into appellant's financial status was not, as appellant alleges, deficient and that the trial court did not err in holding that appellant, who had assets worth approximately $100,000.00, was ineligible for court-appointed counsel.
 {¶ 22} As is stated above, appellant argues, in the alternative, that his waiver of counsel was not valid. The Sixth Amendment, made applicable to the States through the Fourteenth Amendment, guarantees that a defendant in a criminal trial has an independent right of self representation, and that he may proceed to defend himself without counsel when he voluntarily, knowingly, and intelligently elects to do so. Statev. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. A criminal defendant may waive this right to counsel either expressly or impliedly from the circumstances of the case. State v. Weiss (1993),92 Ohio App.3d 681, 684, 637 N.E.2d 47. An effective waiver requires the trial court to " * * * make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right."State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of the syllabus. In Gibson, supra, the Ohio Supreme Court explained what constitutes a "sufficient inquiry" into a criminal defendant's waiver of his right to counsel: "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. " Id. at 377. (Citation omitted).
 {¶ 23} In the case sub judice, the trial court stated on the record prior to the start of trial:
 {¶ 24} "THE COURT: On December the 3, ah, of last year Judge Haas had a colloquy with you, discussion, and — made the same inquiry that I'm making now and asked you if it was your understanding that you chose not to retain private counsel. At that time you said, yes.
 {¶ 25} "Judge has asked you at that time, Are you waiving your right to counsel. You also said, Yes.
 {¶ 26} "And the Judge at that time advised you that to be a valid waiver of counsel it had to be made voluntarily, knowingly and intelligently.
 {¶ 27} "So, again, that's still the purpose here, prior to my asking you to sign that, that waiver, if, in fact, that is your desire at this time.
 {¶ 28} "Do you understand, as you were notified on December the 3, that you're charged with one count of patient abuse?
 {¶ 29} "DEFENDANT BACHAROWSKI: Yes.
 {¶ 30} "THE COURT: And that is a felony offense, it's a felony of the fourth degree. You could be sentenced to a definite period, upon conviction, of from 6 months to 18 months. In addition to that, you could receive a fine of up to $5,000.
 {¶ 31} "Do you still understand that that is the potential sanction or sanctions that are available for that particular indictment?
 {¶ 32} "DEFENDANT BACHAROWSKI: Yes.
 {¶ 33} "THE COURT: Also, understand that there is no requirement for or there is no mandatory jail sentence or prison sentence in this case. You could be released upon conviction, upon preparation of a presentence investigation, to community sanctions.
 {¶ 34} "Do you also recall that information that was given to you at the time?
 {¶ 35} "DEFENDANT BACHAROWSKI: Yes." Transcript at 10-12.
 {¶ 36} The trial court further advised appellant that if he was convicted of patient abuse, he could lose his nursing license. Subsequently, after the Public Defender's office once again found that appellant was not financially eligible for court-appointed counsel, the trial court stated on the record as follows:
 {¶ 37} "THE COURT: At this time, understanding your inability to have Court-appointed counsel, Mr. Bacharowski, is it your desire to waive or give up your right to counsel, based upon all of the information that has been presented at that hearing and the hearing of December the 3, 2001?
 {¶ 38} "DEFENDANT BACHAROWSKI: Yes." Transcript at 23. Appellant then signed a written waiver of counsel stating as follows:
 {¶ 39} "Defendant has been advised that he is entitled to counsel. Defendant has refused to be represented by counsel and has chosen to pursue this case pro so [sic].
 {¶ 40} "Defendant hereby waives his right to be represented by counsel in defending this case."
 {¶ 41} Based on the foregoing, we find that appellant's waiver of counsel was knowing, intelligent and voluntary. The trial court, in this matter, explained to appellant the nature of the offenses against him and the possible penalties upon conviction. The trial court also inquired into appellant's reason for representing himself and, as appellee notes, "the motivation for this decision."
 {¶ 42} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 43} Appellant, in his second assignment of error, contends that his conviction for patient abuse was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 44} "In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim.R. 29 motion for acquittal with the trial court." State v.Perry (Aug. 29, 1997), Trumbull App. No. 94-T-5165, unreported, 1997 WL 590789, at 10, citing State v. Roe (1989), 41 Ohio St.3d 18, 25,535 N.E.2d 1351. Therefore, "[i]f a Crim.R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Id.; see also State v. Roe (1989), supra. (holding that when "appellant failed to timely file a Crim.R. 29 motion for acquittal, . . . and thus failed to preserve his arguments on appeal . . .").
 {¶ 45} In the case sub judice, appellant failed to make a motion for acquittal. Therefore, appellant did not preserve his right to appeal based upon insufficient evidence.
 {¶ 46} However, even if we were to consider appellant's sufficiency argument, we would find that the same lacks merit.
 {¶ 47} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 48} In the case sub judice, appellant was convicted of patient abuse in violation of R.C. 2903.34(A)(1). Such section states as follows: "A) No person who owns, operates, or administers, or who is an agent or employee of, a care facility shall do any of the following: (1) Commit abuse against a resident or patient of the facility, . . ." The term "abuse" is defined in R.C. 2903.33(B) as meaning "knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation." In turn, "physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 49} We find, upon our review of the evidence in this matter, that appellant's conviction for patient abuse was not against the sufficiency or manifest weight of the evidence. As is stated above in the statement of facts, Jeanne Toles testified that she saw appellant slap Bond on the buttocks. Both Toles and Jennifer DiMattio testified that they saw appellant shove Bond down the hallway and that that they saw a red mark on Bond's buttocks that had not been there before. When questioned by Linda Roberts and Kristi Colliver, appellant admitted that he had struck Bond on the buttocks.
 {¶ 50} Based upon the foregoing, we find that appellant's conviction for patient abuse is not against the sufficiency of the evidence. Construing the evidence in appellant's favor, we find that any rational trier of fact could have found that appellant knowingly caused physical harm to Bond by using physical contact against her.
 {¶ 51} Appellant further argues that his conviction for patient abuse is against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 52} While appellant argues that his conviction is against the manifest weight of the evidence, we note that the jury, as trier of fact, was in the best position to assess the witnesses' credibility. Clearly, the jury found Toles, DiMattio, Roberts and Colliver to be credible witnesses. In short, we cannot say that the jury, in convicting appellant of patient abuse, lost its way so as to create a manifest miscarriage of justice.
 {¶ 53} Appellant's second assignment of error is, therefore, overruled.
 {¶ 54} Accordingly, the judgment of the Stark County Court of Common Plea is affirmed.
By: Edwards, J., Hoffman, P.J., and Wise, J. concur.
[1] Appellant, in his "Financial Disclosure Affidavit of Indigency", which was submitted to the trial court as State's Exhibit 1, indicated that he had assets totaling $106,000.00. Appellant further indicated that one of his real properties, which was purchased seven years ago, was worth $79,000.00 and that he paid $500.00 a month in child support. However, on the record, appellant only indicated that he had one child (age 6) and that such child resided at home.