# BROOKHART v. JANIS, DIRECTOR OF THE OHIO DEPARTMENT OF MENTAL HYGIENE AND CORRECTION.

No. 657.   Argued March 21–22, 1966.—Decided April 18, 1966.

*Gerald A. Messerman,* by appointment of the Court, 382 U. S. 899, argued the cause for petitioner.   With him on the brief was *Lawrence Herman,* also by appointment of the Court.

*Leo J. Conway,* Assistant Attorney General of Ohio, argued the cause for respondent.   With him on the brief was *William B. Saxbe,* Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner, James Brookhart, while serving the first of three consecutive sentences of from one to 20 years imposed by an Ohio Court of Common Pleas upon convictions of forgery and uttering forged instruments,[1] brought this action for habeas corpus in the Supreme Court of Ohio.   There is no question raised about that court's jurisdiction.   Petitioner charged and contends here that all his convictions are constitutionally invalid because obtained in a trial that denied him his federally guaranteed constitutional right to confront the witnesses against him (a) by permitting the State to introduce against him an out-of-court alleged confession of a co-defendant, Mitchell,[2] and (b) by denying him the right to cross-examine any of the State's witnesses who testified against him.[3]   Master Commissioners appointed by

---

[1] Petitioner was also convicted in the same trial of breaking and entering and grand larceny.   His sentences on these convictions were made to run concurrently with his sentences for forgery and uttering forged instruments.

[2] Mitchell pleaded guilty after being indicted with petitioner, was sentenced to an Ohio state reformatory, and although in the reformatory at the time of petitioner's trial, was not called to testify in person.

[3] The petition also charged that Brookhart had not been given adequate notice of the charges upon which he was tried because the indictment charging him with forgery and uttering forged instruments was amended at trial.   And in this Court petitioner attacks his convictions on several other constitutional grounds.   We

the State Supreme Court recommended that habeas corpus be denied. They found that "petitioner although he did not plead guilty agreed that all the state had to prove was a prima facie case, that he would not contest it and that there would be no cross-examination of witnesses." This finding was not based on oral testimony but was based exclusively on an examination of the transcript of the proceedings in the trial court in which petitioner was convicted. The State Supreme Court accepted its Commissioners' view of waiver, stating that the transcript of the trial showed that:

"In open court, while represented by counsel, petitioner agreed that, although he would not plead guilty, he would not contest the state's case or cross-examine its witnesses but would require only that the state prove each of the essential elements of the crime." 2 Ohio St. 2d 36, 40, 205 N. E. 2d 911, 914.

Upon this basis the State Supreme Court rejected petitioner's constitutional contentions and ordered him remanded to custody. 2 Ohio St. 2d 36, 205 N. E. 2d 911. We granted certiorari to determine whether Ohio denied petitioner's constitutional right to be confronted with and to cross-examine the witnesses against him. 382 U. S. 810.

In this Court respondent admits that:

"[I]f there was here a denial of cross-examination without waiver, it would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it."

This concession is properly made. The Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." And in *Pointer* v.

find it unnecessary to decide any of the additional contentions set out in this note.

4

*Texas,* 380 U. S. 400, 406, we held that the confrontation guarantee of the Sixth Amendment including the right of cross-examination "is 'to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.' *Malloy* v. *Hogan, supra,* 378 U. S., at 10." See also *Douglas* v. *Alabama,* 380 U. S. 415. It follows that unless petitioner did actually waive his right to be confronted with and to cross-examine these witnesses, his federally guaranteed constitutional rights have been denied in two ways. In the first place he was denied the right to cross-examine at all any witnesses who testified against him. In the second place there was introduced as evidence against him an alleged confession, made out of court by one of his co-defendants, Mitchell, who did not testify in court, and petitioner was therefore denied any opportunity whatever to confront and cross-examine the witness who made this very damaging statement. We therefore pass on to the question of waiver.

The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law. There is a presumption against the waiver of constitutional rights, see, *e. g., Glasser* v. *United States,* 315 U. S. 60, 70–71, and for a waiver to be effective it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U. S. 458, 464.

In deciding the federal question of waiver raised here we must, of course, look to the facts which allegedly support the waiver.[4] Upon an examination of the facts

---

[4] When constitutional rights turn on the resolution of a factual dispute we are duty bound to make an independent examination of the evidence in the record. See, *e. g., Edwards* v. *South Carolina,* 372 U. S. 229, 235; *Blackburn* v. *Alabama,* 361 U. S. 199, 205, n. 5.

shown in this record, we are completely unable to agree with the Supreme Court of Ohio that the petitioner intelligently and knowingly waived his right to cross-examine the witnesses whose testimony was used to convict him. The trial record shows the following facts: Petitioner was arraigned January 29, 1962, without a lawyer, and pleaded not guilty to all charges against him. Two days later the court appointed counsel to represent him. Not able to make bond, he remained in jail until March 23, 1962, at which time he was brought before the judge for trial. There petitioner's appointed counsel told the judge that his client had signed waivers of trial by jury and wanted to be tried by the court. The judge in order to verify the waivers showed petitioner the two written waivers of trial by jury bearing his signature and asked him if the signature was his. Petitioner said it was. The following colloquy among the judge, petitioner, and his counsel then took place in open court:

"MR. ERGAZOS [petitioner's lawyer]: That[']s correct, Your Honor.

"THE COURT: Anything further?

"MR. KANDEL: Nothing further.

"MR. ERGAZOS: The only thing is, Your Honor, this matter is before the court on a prima facie case.

"THE COURT: There being no . . . going to be no cross-examination of the witnesses, so the court will know and the State can't be taken by surprise, the court doesn't want to be fooled and have your client change his mind half way through the trial and really contest it, the State has a contest, we want to know in fairness to them so they can put on complete proof.

"MR. ERGAZOS: I might say this, Your Honor, if there is any testimony adduced here this morning which leaves any question as to this defendant in

connection with this crime I would like to reserve the right to cross-examine at that time.

"THE COURT: That is raising another . . . that is putting the State on the spot and the court on the spot, I won't find him guilty if the evidence is substantial.

"MR. ERGAZOS: We have a jury question in the court, undoubtedly there will be . . .

"THE COURT: Ordinarily in a prima facie case . . . the prima facie case is where the defendant, not technically or legally, in effect admits his guilt and wants the State to prove it.

"MR. ERGAZOS: That is correct.

"THE COURT: And the court knowing that and the Prosecutor knowing that, instead of having a half a dozen witness on one point they only have one because they understand there will be no contest.

"A [Brookhart] *I would like to point out in no way am I pleading guilty to this charge.*

"THE COURT: If you want to stand trial we will give you a jury trial.

"A I have been incarcerated now for the last eighteen months in the county jail.

"THE COURT: You don't get credit for that.

"A For over two months my nerves have been . . . I couldn't stand it out there any longer, I would like to be tried by this court.

"THE COURT: Make up your mind whether you require a prima facie case or a complete trial of it.

"MR. ERGAZOS: Prima facie, Your Honor, is all we are interested in.

"THE COURT: All right." (Emphasis supplied.)

From the foregoing it seems clear that petitioner's counsel agreed to a prima facie trial. By agreeing to this truncated kind of trial—if trial it could be called—

we can assume that the lawyer knowingly agreed that the State need make only a prima facie showing of guilt and that he would neither offer evidence on petitioner's behalf nor cross-examine any of the State's witnesses. The record shows, however, that petitioner himself did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea and in which he would not have the right to be confronted with and cross-examine the witnesses against him. His desire not to agree to such a trial is shown by the fact that immediately after the judge accurately stated that in a prima facie case the defendant "in effect admits his guilt," Brookhart personally interjected his statement that "I would like to point out in no way am I pleading guilty to this charge." Although he expressly waived his right to a jury trial, he never, at any time, either explicitly or implicitly, pleaded guilty. His emphatic statement to the judge that "in no way am I pleading guilty" negatives any purpose on his part to agree to have his case tried on the basis of the State's proving a prima facie case which both the trial court and the State Supreme Court held was the practical equivalent of a plea of guilty. Our question therefore narrows down to whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him. We hold that the constitutional rights of a defendant cannot be waived by his counsel under such circumstances. It is true, as stated in *Henry* v. *Mississippi,* 379 U. S. 443, 451, that counsel may, under some conditions, where the circumstances are not "exceptional, preclude the accused from asserting constitutional claims . . . ." Nothing in *Henry,* however, can possibly support a contention that counsel for defendant can override his client's desire expressed in

open court to plead not guilty [5] and enter in the name of his client another plea—whatever the label—which would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty.  Since we hold that petitioner neither personally waived his right nor acquiesced in his lawyer's attempted waiver, the judgment of the Supreme Court of Ohio must be and is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Separate opinion of MR. JUSTICE HARLAN.

I do not find the issue in this case as straightforward as does the Court.  If the record were susceptible only of the reading given it by the Court, I would concur in the judgment.  However, for me this case presents problems of two sorts.

First, the precise nature of the "rights" that were allegedly "waived" is not wholly clear.  One view, adopted by the Court, is that petitioner's lawyer in effect entered a conditional plea of guilty for the defendant. Another interpretation, which is certainly arguable, would find the agreement between petitioner's counsel and the trial court to involve no more than a matter of trial procedure.  I believe a lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval. The decision, for example, whether or not to cross-examine a specific witness is, I think, very clearly one for counsel alone.  Although it can be contended that the waiver here was nothing more than a tactical choice of this nature, I believe for federal constitutional purposes

---

[5] Compare *Rideau* v. *Louisiana,* 373 U. S. 723, 726.

the procedure agreed to in this instance involved so significant a surrender of the rights normally incident to a trial that it amounted almost to a plea of guilty or *nolo contendere*. And I do not believe that under the Due Process Clause of the Fourteenth Amendment such a plea may be entered by counsel over his client's protest.

Second, given the need for petitioner's approval of the entry of such a plea, the further question arises whether petitioner did in fact agree to be tried in a "prima facie" trial without the opportunity to cross-examine witnesses. The Supreme Court of Ohio, on the basis of an examination of the record, found that petitioner "agreed that all the state had to prove was a prima facie case, that he would not contest it, and that there would be no cross-examination of witnesses." *Brookhart* v. *Haskins,* 2 Ohio St. 2d 36, 38, 205 N. E. 2d 911, 913. This Court, after an independent examination of the relevant portion of the same record, reprinted, *ante,* pp. 5–6, finds that petitioner "did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea . . . ." *Ante,* p. 7.

The decisive fact is of course the state of petitioner's mind—his understanding and his intention—when his counsel stated to the trial court: "Prima facie, Your Honor, is all we are interested in." My reading of the record leaves me in substantial doubt as to what petitioner's actual understanding was at the end of the pertinent courtroom colloquy, a doubt that is enhanced by the general unfamiliarity that seems to exist with this Ohio "prima facie" practice.* I cannot see how the

---

*The Supreme Court of Ohio characterized the procedure as "unusual," 2 Ohio St. 2d, at 39, 205 N. E. 2d, at 914. At oral argument, the Assistant Attorney General of Ohio noted that he had been unaware of such a procedure, and that the practice could not be found in any statute or rules of court. The State explains the procedure as follows: "There is no statutory plea of nolo contendere

question can be satisfactorily resolved solely on the existing record.  I would therefore vacate this judgment and remand the case for a hearing under appropriate state procedures to determine whether petitioner did in fact knowingly and freely choose to have his guilt determined in this type of trial.  Failing the availability of such proceedings in the state courts, the avenue of federal habeas corpus would then be open to petitioner for determination of that issue.

---

in Ohio in felony cases, therefore, when one is charged with a crime which he knows that he cannot successfully defend, but a plea of guilty will subject him to a penalty in a civil suit arising out of the same factual situation, he is without recourse to a plea of nolo contendere as is permitted in federal courts and certain other state courts.  To circumvent this difficulty some Ohio courts have allowed, as was done here, the accused to enter a plea of not guilty and by arrangement require the prosecution to prove only a *prima facie* case."  Brief, at 44–45, note 41.