MASHETER, DIR. OF HIGHWAYS, *v.* HUGHES ET AL.

[Cite as Masheter v. Hughes (1970), 25 Ohio Misc. 121.]

(No. 20042—Decided November 13, 1970.)

Common Pleas Court of Paulding County.

*Mr. Paul W. Brown*, attorney general, and *Mr. Allen D. Dobnicker*, for plaintiff.

*Mr. Patrick H. Young*, for defendant, David R. Hughes.

HITCHCOCK, J.   Plaintiff, Director of Highways, filed his petition herein on September 17, 1969.  Summons correctly specifying October 27, 1969, as the answer date, was served upon defendant Hughes on September 23, 1969.

On November 17, 1969, defendant Hughes by his counsel filed a motion herein requesting leave to file an answer stating that "Defendant's attorney says that by reason of inexperience an answer had not been filed herein within the time prescribed by R. C. 163.08."

At the hearing on this motion held January 8, 1970, it was disclosed that defendant Hughes delivered his summons to his attorney, a solo-general practitioner, on September 24 or October 2, 1969, and that defendant was the first client said attorney ever had in respect to an appropriation proceeding, the attorney having been admitted to the Ohio Bar on May 8, 1967; that the attorney received his legal education at the University of Detroit and had never read R. C. 163.08; that although he noted the answer date of October 27, 1969, he was acquainted with the practice of the incumbent judge of this court, in matters of general litigation to grant upon first request by any party from seven to thirty days leave in which to plead.  Finally that he first discovered R. C. 163.08 in November after the answer date had passed.

Consequently, the question for decision is whether or not the first paragraph of the syllabus of *Cincinnati* v. *Bossert Machine Co.* (1968), 16 Ohio St. 2d 76; cert. den. 394 U. S. 998, 89 S. Ct. 1592, 22 L. Ed. 2d 776 (1969), reading: "The mandate of Section 163.08, Revised Code, that 'no extension of time for filing of an answer shall be granted' to a defendant whose property is the subject of a petition for appropriation by a public agency must be obeyed by the trial court.  The statute does not violate due process nor trench on any judicial prerogative," requires that the court overrule defendant's motion as the plaintiff Director of Highways maintains.

Before answering that question the court will discuss the issues raised in light of the facts.

If this court could conceive that in discharging its duties its proper attitude would be that of the British soldiers at Balaklava where it was "Theirs not to reason why, Theirs but to do and die," it would long ago have overruled defendant's motion.

On the facts as revealed in *Bossert*—indicating the landowners ignored the summons until after answer day had passed—only for the purpose of obtaining informed appraisals of the value of their property—this court agrees with the judgment of the majority. Nevertheless, this court notes that only four justices approved the mentioned syllabus of law, two would have added to the penultimate sentence of the first full paragraph of the opinion to make it read re comment approving prior cases—"We held that the trial court had no power to extend the statutory time, *where as in each of those cases, the landowner advanced no reasonable justification for failure to file his responsive pleading within the time provided by the statute*"—and would modify the syllabus accordingly. Yet one justice dissented that even this narrowness was an improper abridgement of judicial power.

The majority, however, in addition adhered to the prior ruling that the time for filing the answer is jurisdictional and that the inviolate constitutional right to have a jury fix the compensation for the property taken may be waived, as it was held to be, by complete inaction on the part of the landowners in filing an answer. Again, I do not quarrel with this decision as I find many of my fellow trial judges vexed, as I am, by persons who feel free to ignore court summons or orders and I perceive a necessity for maintaining a basic stability in social organization through law which can be known. There is of course no occasion to mitigate the rigors of implied conditions for those who fail to respond to appropriation proceedings for reasons well within their control.

Still this court can not help noting that in respect to the waiver of constitutional rights by those charged with predatory conduct it is held that there is no waiver unless

the same be informed and intelligent and clearly shown in the record, as there is a presumption against such waiver. See *Brookhart* v. *Janis* (1966), 384 U. S. 1, 86 S. Ct. 1245, 16 L. Ed. 2d 314, 7 Ohio Misc. 77, reversing *Brookhart* v. *Haskins* (1965), 2 Ohio St. 2d 36. As a result "three consecutive sentences of from one to 20 years * * * upon convictions of forgery and uttering forged instruments" imposed upon accused who was represented by well informed counsel were set aside in a habeas corpus proceeding. In the trial in Common Pleas Court Brookhart's counsel entered pleas of "not guilty" but stated in open court that the state would only be required to establish a prima facie case while defendant said, "I would like to point out in no way am I pleading guilty to this charge." Brookhart was also convicted of breaking and entering and grand larceny but the sentences on these convictions were made to run concurrently with his sentence for forgery and uttering forged instruments.

The defendant here is a young doctor of chiropractic just well launched in his profession who did exactly what he should have done with his summons upon receipt thereof. He gave it to his lawyer and at least 25 days—perhaps 32 days—before the answer date written thereon. His attorney read the words found therein reading: "* * * for appropriation of property and must answer by the 27th day of October A. D., 1969, or the petition (which asserted a value of $150) of said plaintiff will be taken as true, and judgment rendered accordingly."

The attorney, however, had not been either specially schooled or experienced in Ohio appropriation proceedings and was then, as I perceive are all the competent attorneys in Paulding and adjacent counties, busily occupied with a substantial general practice. Until he had read the current provisions of the Ohio Revised Code he could not have known of this special requirement unless he had read *Bossert* and had some special reason to clearly remember the rule announced there for more than nine months. Nor did the summons warn either the landowner or his attorney that this was a proceeding wherein usual rules applicable to default judgments did not apply.

Had the words of the summons mentioned above been followed by a sentence to this effect: *"This is a proceeding wherein the statute (R. C. 163.08) deprives the court of jurisdiction to extend the time for answer,"* I would surely not now be writing this opinion, nor have the feeling that both an upright, responsible, unoffending layman and his attorney, two diligent young men, had been accorded something less than justice by our law.

In short, I cannot for one moment be of the opinion that the landowner here ever made any "informed and intelligent waiver" of his right to have a jury assess the compensation due him as guaranteed by Section 19 of Article I and Section 5 of Article XIII of the Constitution of Ohio, or showed any disregard of his rights by conduct such that his waiver thereof might be properly implied.

The two Ohio cases cited in *Bossert* in support of the proposition that jury trial might be waived, were *Bethesda Hospital Assn.* v. *Preston* (1963), 175 Ohio St. 277, and *Cassidy* v. *Glossip* (1967), 12 Ohio St. 2d 17. The former involved a waiver agreed to and made by counsel in open court in respect to issues of civil law before the trial court, and some were confided to court, while others were submitted to a jury. The latter concerned failure to request trial by jury in cases triable by jury not later than the "third day prior to the date of the commencement of the trial" as required by a rule of court which concluded with this sentence: "Failure to make such a request shall be deemed a waiver of jury trial."

In the *Preston case* there was surely waiver which was informed and intelligent, deliberately made, and clearly shown in the record. In *Cassidy* there is no fact disclosed indicating that noncompliance with the rule of court there was based on any good cause, impossibility, or excusable ignorance. From all that is disclosed in the opinion it appears quite possible that in *Cassidy* both client and counsel did not timely request jury trial because they, at the beginning of the litigation intended to waive the same. And then, on the morning a trial to the court was to proceed, a request for jury was made. I doubt not that experienced lawyers would make such a move—if some judge

other than the one they expected appeared to conduct the trial, or some similar change in circumstances had developed. Possibly, I suppose, the attorney may not have read the court's rule—particularly if he may have been from another county. Or perhaps he was one of the local bar who rarely prepare their cases well.

Of course I recall it has been said that in civil cases constitutional rights are on a different plane from those in criminal cases and so do not require so strict enforcement, the reason being that the humane right of liberty or freedom occupies a higher level of importance than the right of property. Still both our state and national constitutions commonly proscribe deprivation of "life, liberty, or property" without due process of law. And this court, from its own experience, study of history, and acquaintanceship with individuals living in these United States (in exile from their homelands located on three different continents) because of the tyrannical, dictatorial Communistic governments now in complete control of their native lands, believes it clear that there are few human rights more highly prized than the one enabling even a poor person to declare "this is mine" and have the protection of the law when such declaration is honestly made.

This court does recall that *Chicago, Burlington & Q. Rd. Co.* v. *Chicago* (1897), 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979, was the very first interpretation of the Fourteenth Amendment holding that a judgment of a state court by which private property is taken for public use without just compensation, even though authorized by statute, fails to accord to the owner due process of law.

Under cover of letter dated August 27, 1970, the director furnished this court with a copy of the opinion of the Court of Appeals for Franklin County, entitled *Masheter* v. *Benua,* No. 9804, dated July 28, 1970, before publication in 24 Ohio App. 2d 7. Examination of that case reveals that a tract valued by the director at $53,920 was involved. The petition was filed August 1, 1969, and the answer day is not stated although if the statute re summons was followed the answer day should have been Sep-

tember 1, 1970. As additional facts the statement of the court is:

"* * * On September 15, 1969, appellees (landowners) filed a motion to quash summons on the ground that appellant's counsel failed to affix his written signature to the petition even though the names of the Attorney General and the Assistant Attorney General had been typed on the petition. On November 10, 1969, the trial judge signed an entry overruling appellee's motion to quash; then on November 13, 1969, no answers having been filed by the landowners a default judgment was entered, and the court, based upon the value of the property as stated in the Declaration of Intention to Take Possession, ordered title to the property conveyed to the state of Ohio. On November 17, 1969, the landowners filed their answers; on November 26, 1969, they filed their motion to set aside the default judgment. On April 17, 1970, the trial court vacated the entry of November 13, 1969, and granted the landowners leave to file their answers under the then existing rules of the Court of Common Pleas. The landowners refiled their answers on April 22, 1970, after having withdrawn by court authority the deposit for value of the land."

Applying *Bossert* the court overruled the landowner's motion to dismiss and sustained the director's appeal by reversing the trial court's order of April 14, 1970, setting aside the default judgment of November 13, 1969, in favor of the director and restored the vacated judgment to full force and effect.

This court notes that if the *Benuas* employed in the trial court the counsel who represented them in the appellate court, they had the services of one of the most prestigious law firms in Columbus whose members had also apparently forgotten the rule of *Bossert* and were not aware that our Supreme Court in reference to appropriation statutes prior to adoption of Chapter 163, had decided *Thormyer* v. *Irvin* (1960), 170 Ohio St. 276, and declared that in an appropriation proceeding by the state of Ohio the jurisdiction of the Court of Common Pleas is limited to a determination of the amount of compensation and dam-

ages to which the landowner is entitled, and should other questions be involved, they need be determined in a separate action to enjoin the proceeding.

In *Bossert* our Ohio Supreme Court at pp 78, 79 says: "The Constitution of Ohio authorizes the General Assembly to define the jurisdiction of the Court of Common Pleas. But the power to grant jurisdiction includes the power to withhold it," citing *Madjorous* v. *State* (1925), 113 Ohio St. 427, 431, in support thereof. The syllabus of that fascinating case reads: "The prohibition against remission of fines and suspension of sentence provided in Section 6212-17, General Code, is a valid exercise of legislative power, and does not invalidate the operative provisions of that section." Mentioned General Code section was then listed under the chapter title, "Intoxicating Liquors." I ` there is a single jurisdiction in the world where mandatory criminal sentences have noticeably promoted anything called justice or good behavior I have yet to learn of it.

The court continues with: "In this instance, the General Assembly has merely exercised its prerogative to prescribe procedures not inconsistent with the jurisdiction granted. See *In re Miller* (1954), 160 Ohio St. 529, 537." Also in 46 A. L. R. 2d 493.

It seems to me that this very *Miller case* makes a rather clear distinction between (1) jurisdiction and (2) the manner of its exercise. Personally, I take a dim view of legislative commands which appear to require judges to exercise judicial power injudiciously. And what do we have here? Do we not have a command to follow words in a book only a few have read? And without fair warning, in the light of general experience, to foist upon property owners who receive summons in an appropriation case consequences for procedural delay not encountered by their neighbors and friends who receive summons in other legal proceedings?

Nor is it lost on this court that the Eminent Domain Committee of the Ohio State Bar Association in its report to the Council of Delegates as shown in the Ohio Bar for April 22, 1968 (Vol. XLI, p. 515), recommended:

"III.

"That Section 163.08 be amended by deleting the last sentence thereof which reads: 'No extension of time for filing an answer shall be granted.

" 'Committee Comment: The experience of many committee members has been that the judges do not heed this language and that they grant an extension of time in practically every case. We further feel that this may be an unconstitutional encroachment by the Legislature on judicial powers.' "

As shown at page 711, Vol. XLI, No. 25, of the Ohio Bar, the Council of Delegates did approve this recommendation of the Eminent Domain Committee which approval was published May 27, 1968. To date the Legislature has not amended the statute to follow the recommendation as is its privilege. And despite the Bar Association report, *Bossert* gives no consideration to the proposition of whether or not the rule announced should have been limited to prospective application.

Of course I do not recommend that judges ignore legislation but if the trial judges of Ohio have not paid close heed to this section I perceive the reason is that they have at least sensed that it is a harsh and uncompromising rule; that it permits well behaved citizens to be deprived of their constitutional rights in circumstances such as are not permitted to deprive the ill-behaved of their constitutional rights; that the statute does affect the manner of the administration of justice and at least in the traditional sense is not properly a limitation on jurisdiction; that the spirit of the statute is entirely contrary to both the Ohio Civil Code of 1853 and the Ohio Rules of Civil Procedure of 1970 pertaining to the great bulk of civil litigation; that most laymen and many lawyers are acquainted with the fact that our courts are loath to deny any man his day in court and do not realize the peculiar consequences of failure to answer an appropriation summons—*especially where there is no requirement that such a summons give fair warning of failure to answer within time;* the rule does not provide any exception for the landowner who is seriously ill, or away on extended vacation, or is illiterate or of low intel-

ligence and understanding, or of any other condition. For me, it is extremely difficult (as I am sure it is for many other Ohio trial judges) to square the syllabus rule of *Bossert* with the requirements of Article I, Section 16 of the Ohio Constitution which has been in force and effect since Ohio became a state in 1803.

Perhaps my observation of the world about me is defective but surely we cannot enjoy the fruits of private business and free enterprise unless we have appraisers for buyers and appraisers for sellers who know and clearly understand that although an occasional sale may be made at either the buyer's or the seller's appraisal price neither is common and the great bulk of sales occur by the striking of a bargain on a particular day influenced greatly by taste, intrinsic quality, and a host of present circumstances.

Consequently, the petition—now complaint—no doubt states an appraisal value likely to be close to a common buyer's appraisal and on the low side. This fact elicits no criticism from me for I think any other procedure likely to be either impractical or foolhardy. But I feel certain that in Ohio many landowners affected by appropriation proceedings are not particularly rich and when the well behaved citizen owner of a small home is affected by appropriation proceedings as is the landowner here, but is denied the constitutional right to have a jury assess the damages for reasons such as are disclosed in this record, there are serious matters involved, and I am not at all sure that when the summons does not give fair warning of the extraordinary consequences for failure to answer within time, due process of law required by the Fourteenth Amendment, U. S. Constitution, is not infringed.

From all I have been able to learn of appropriation proceedings I approve the position of Justices Taft and Schneider as stated in *Bossert*. Also, I believe Common Pleas Judge Castle correctly decided *Cincinnati* v. *Hawthorne* (1970), 23 Ohio Misc. 325, the headnote of which reads: "The failure of a defendant, not represented by counsel, to verify an answer filed in the action to appropriate property pursuant to Chapter 163, Revised Code, is

not grounds for striking the answer." In that case the landowners upon receipt of their summons wrote a letter on looseleaf notebook paper with black ballpoint pen addressed "Attention of Clerk of Common Police (*sic*) Court" clearly indicating the owner's opinion that the city's offer was "unfair and underestimated." Even before the adoption of our Ohio Rules of Civil Procedure—dispensing with verification—took effect it had been held that lack of verification was a pleading mistake which could be corrected when noted if the court found same to be in furtherance of justice.

In the instant case Mr. Hughes relied on his young attorney who was unacquainted with the fact that in Ohio appropriation proceedings no extension of time could be granted in which to file an answer. In the *Masheter* v. *Benua case, supra* (24 Ohio App. 2d 7), apparently long established and prestigious counsel were unaware that this provision was jurisdictional and that no objection based upon a statutory requirement (in *Benua* that a petition "must" be subscribed by counsel as stated in R. C. 2309.46) would even extend the time for answer such length of time as was necessary to require the director to comply with the statutory requirement.

Still had Mr. Hughes written an ill-addressed letter to the Clerk of this court protesting the value determined by the director on the day he gave his summons to his attorney it is clear that he would not have lost his right to have a jury determine his damages in this case.

Were this a case of first impression I would surely hold that here good cause existed for extending the time for filing an answer. But as I find myself bound by *Bossert* that I have no jurisdiction to do so, defendant's motion must be overruled.

Certainly this court is sympathetic to the apparent legislative purpose of Chapter 163 to move appropriation cases promptly through the courts and notes that when such proceedings occur in periods of rising land values owners are inclined to drag their feet hoping for a better price while in periods of declining values, even though less

common the past century, public officials were in no hurry to arrive at the hour of decision re value of property taken for public purposes. This court, however, must ask our legislators, if R. C. 163.08 is to remain as is, if appropriation summons ought not fairly warn owners of the consequences of failure to answer within time or provide that any default appropriation judgment be reviewable for just cause, within thirty days of its entry.

As I perceive that the *Bossert* rule is an extremely hard one which is far from universally well known, even among attorneys; that Rule 1(C)(2) of the Ohio Rules of Civil Procedure excepts appropriation proceedings as within their scope; and that the summons now provided in appropriation proceedings gives no fair warning to the landowner of the consequences of his failure to answer within the time allowed, I have felt it necessary to write this opinion setting forth my observations and conclusions as a warning to all persons affected by or concerned with appropriation in the state of Ohio, especially members of the Ohio Bar who have few appropriation cases.

Counsel may prepare an appropriate judgment entry overruling defendant's motion for leave to plead and awarding judgment to the director granting the prayer of his petition.

*Judgment for plaintiff.*