Filed 1/27/15  P. v. Shepherd CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B254070 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA392569) |
| v. | |
| KEITH SHEPHERD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Myra June Sun, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Keith Shepherd appeals from the judgment entered following his conviction by jury of violating Vehicle Code section 2800.2, driving in willful or wanton disregard while evading a peace officer. Defendant was sentenced to three years in prison and ordered to pay various fines and fees. He contends the trial court erred by excluding his mental health expert witness from testifying about certain statements defendant made to the expert as they bear on the defendant's mental state at the time of the incident. We conclude that a portion of the expert's testimony was erroneously excluded, but that the error was harmless. We therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

An information filed on November 21, 2012, charged defendant with one count of violation of Vehicle Code section 2800.2, subdivision (a), driving a vehicle in willful or wanton disregard for the safety of persons or property while fleeing a pursuing peace officer. The information further alleged that defendant had six prior convictions resulting in prison terms. (Pen. Code, § 667.5, subd. (b).) The jury trial commenced on April 19, 2013.

### A. *Prosecution's Case*

Los Angeles Police Department Officer Brendy Ponce testified that he was on duty on the evening of January 6, 2012, patrolling in a marked police vehicle with his partner, Officer Gabriel Barrientos. At approximately 8:00 p.m., Officer Ponce observed defendant, who was driving a Ford Fusion, run a stop sign at 50th Street and Broadway in Los Angeles. Officer Ponce made a U-turn to initiate a traffic stop of defendant. Immediately thereafter, defendant accelerated and began driving "really fast" at "easily over 50 miles per hour" in a 25-mile per hour zone. Defendant ran another stop sign and turned right at a speed that caused his vehicle to fishtail during the turn. At this point, Officer Ponce turned on his vehicle's lights and sirens and continued to follow defendant's vehicle, attempting to catch up to him. Defendant appeared to increase his speed, ran a red light, and proceeded on the on-ramp for the northbound 110 Freeway.

2

Officer Ponce estimated that defendant was driving in excess of 100 miles per hour. Defendant also was driving erratically, weaving in and out of traffic, while the other drivers were driving about 40-45 miles per hour. The officers lost sight of defendant in traffic as he drove onto the on-ramp to the 10 Freeway.

Several minutes later, another LAPD officer located defendant's car on the connector road between the 110 Freeway and the eastbound 10 Freeway. The unoccupied vehicle was stopped and appeared to have collided with the side wall of the freeway. Three K-9 officers and their dogs arrived at the scene and discovered defendant approximately 45 minutes later, hiding under a vehicle in a parking lot located under the freeway connector road overpass. Defendant was arrested and waived his *Miranda*[1] rights. Officer Ponce asked defendant if he wanted to talk about what was going on and defendant responded "I didn't do shit." Officer Ponce then asked defendant why he ran and defendant said "I don't like being messed with by cops or by police." Defendant refused the offer to provide a written statement.

LAPD Officer Lotus Leong, a collision investigator, testified that she examined the crash site and defendant's vehicle and determined the collision was caused by driving at an unsafe speed.

*B. Defense Expert*

Prior to trial, the prosecution filed a motion in limine seeking to limit the testimony of the defense mental health expert, clinical psychologist Richard Romanoff, Ph.D. Specifically, the prosecution sought to exclude, among other things, Dr. Romanoff from testifying to defendant's out of court statements made during an interview shortly before trial. In his report, Dr. Romanoff indicated that he had reviewed defendant's criminal and medical records and had interviewed defendant and defendant's wife on May 13, 2013, to evaluate defendant's "overall and current psychological functioning with a particular focus on his mental health state in the period of time associated with his

---

[1] *Miranda v. Arizona* (1966) 384 U.S.

3

involvement in the current alleged offense." Dr. Romanoff opined that defendant had a "long-standing paranoid delusional system that includes a belief that the CIA pursues organized efforts to communicate with him in order to control his behavior." Specifically, defendant told Dr. Romanoff that he had been followed by the CIA for many years and "has felt personally persecuted by them."

Defendant also stated that "in the weeks preceding this case, [t]he CIA was fucking with me, they were heavy into it for a whole week, I was eluding their ass for a while, but then they got to me." However, with respect to the events of January 6, 2012, defendant did not indicate that he believed he was fleeing from the CIA that day, instead telling Dr. Romanoff that he had "no specific recollection of being followed by police, or fleeing from them, or jumping off a freeway on-ramp." Defendant was aware he was accused of fleeing from the police, but stated "I believe that the CIA sent that report to [the police], that I jumped off the freeway, it's a plot, made up by the CIA."

Dr. Romanoff's report also detailed defendant's psychiatric treatment beginning in March of 2011, when defendant began "experiencing auditory and visual hallucinations, active delusional thinking, paranoid thinking, and mood swings," as well as prior "psychiatric impairment dating back to age twelve."

Dr. Romanoff concluded defendant had a "pattern of symptoms" "consistent with a diagnosis of schizophrenia or schizoaffective disorder." He noted that defendant's beliefs regarding the CIA "appear to have been in place both in the period of time immediately preceding and subsequent to" the incident at issue. Dr. Romanoff noted that defendant's "consistent absence of recollection" regarding these events "make any effort to definitively reconstruct his mental state during this time difficult to do," and stated that this absence of memory was "somewhat unusual." However, he opined that it was "quite likely" that defendant's "paranoid delusional thinking, possibly exacerbated by ongoing auditory hallucinations, directly contributed to" defendant's actions on January 6, 2012. Dr. Romanoff further noted that he did not believe defendant to be malingering, based on

4

the "clear documentation" of previous mental illness and the "specific pattern of behavior" exhibited by defendant during the evaluation.

At the hearing on the prosecution's motion in limine, the prosecutor primarily objected to Dr. Romanoff's testimony discussing defendant's statements regarding his lack of memory of the incident and his beliefs about the CIA. The prosecutor noted that she would withdraw these objections if defendant testified, because he would then be subject to cross-examination.

Relying on *People v. Bell* (2007) 40 Cal.4th 582 (*Bell*), the trial court noted it had "considerable discretion to control the form in which an expert is questioned to prevent the jury from learning of incompetent hearsay," and to "weigh the probative value of the inadmissible evidence against the risk that the jury might improperly consider it as independent proof of a fact recited therein." In this instance, the court indicated a concern about the danger, even with a limiting instruction, that the jury would accept defendant's statements "as his version of what occurred" and further noted that detailed testimony by Dr. Romanoff about defendant's statements might not be "necessary" given the other bases he could give for his opinion, including defendant's history, his medication, and "his evaluation of his medical condition or any mental defects that he may have." Thus the statements at issue were more prejudicial than probative under Evidence Code section 352.[2] The court indicated at several points during oral argument that its focus was whether to exclude defendant's statements "regarding the day of the incident." However, the court then framed its ruling as excluding the expert's testimony "regarding any statements that the defendant made with respect to the events of that particular day and everything else the defendant told him [the expert] regarding his background. And he can testify that he's [defendant] had hallucinations in the past. . . .

_____

[2]     All further statutory references are to the Evidence Code unless otherwise indicated.

5

As to everything else, [the expert] should be allowed to testify with the limiting instruction."

The court then granted the prosecution's motion to preclude testimony from the defense expert about whether defendant had the requisite mental state at the time of the incident, as defense counsel indicated she had no intention of eliciting such an opinion. Based on these rulings, the prosecutor moved to exclude Dr. Romanoff entirely, arguing that because he could not testify about defendant's statements regarding the day of the incident, he lacked foundation to testify about defendant's mental state at the time of the crime and any other testimony would be irrelevant. The court disagreed, explaining that the expert was not precluded from testifying regarding a number of facts on which he could base an opinion as to defendant's mental state, including defendant's past mental history, his observations of defendant, and his interview of defendant's wife, and that Dr. Romanoff could also talk about "how those disorders may affect a person" and "in general about the mental state or mental conditions."

*C. Defendant's Case*

In her opening statement, defense counsel stated the defense would present evidence that "at the time . . . [defendant] was suffering from or experiencing the affects [sic] of mental illness." However, defendant did not call Dr. Romanoff. Instead, defendant recalled Officer Leong as the only witness. Defense counsel's questioning of Officer Leong and argument in closing focused primarily on highlighting inconsistencies in the testimony of prosecution witnesses, including errors in the police report and Officer Leong's report.

*D. Verdict and Appeal*

The jury found defendant guilty on count 1. Defendant admitted five prior prison term felony convictions. The trial court sentenced him to three years in state prison and entered judgment on November 26, 2013. Defendant timely appealed.

6

Defendant contends the trial court erred in excluding certain statements he made to Dr. Romanoff and, as a result, effectively precluded him from presenting a defense that he failed to form the specific intent required for a violation of Vehicle Code section 2800.2, and thereby deprived him of a fair trial. Defendant appears to challenge the exclusion of three types of statements: (1) what he did not remember about the incident (e.g., his lack of recollection of being followed by police, of fleeing from police, or of jumping off the freeway); (2) what he did remember about it (e.g., that "I remember I saw a nurse" and "I remember that there were helicopters following me"); and (3) his beliefs about the CIA's attempts to control him.

The proper scope of expert testimony concerning a defendant's mental state after the adoption of Penal Code sections 28 and 29, and the appropriate limitation on that testimony under Evidence Code section 352, continue to present difficult issues. (*People v. Cortes* (2011) 192 Cal.App.4th 873, 902 (*Cortes*).) We review the trial court's ruling on the exclusion of expert testimony for abuse of discretion. (*Id*. at p. 908.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) While we agree that some of the statements defendant made to the expert were excluded in error, we find that defendant suffered no prejudice as a result.

*A. The Trial Court Erred in Excluding Certain Prior Statements*

Under section 801, an expert may rely upon otherwise inadmissible material, including inadmissible hearsay statements, so long as it is material "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates." (See, e.g., *In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness can base "opinion on reliable hearsay, including out-of-court declarations of other persons"].) On direct examination, an expert witness may state "the reasons for his opinion and the matter . . . upon which it is based" (Evid. Code, § 802); thus, "an expert witness whose opinion is based on such inadmissible matter can, when testifying,

7

describe the material that forms the basis of the opinion. [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 618-619 (*Gardeley*).) However, as a general rule, "'[w]hile an expert may state on direct examination the matters on which he relied in forming his opinion, he may not testify as to the details of such matters if they are otherwise inadmissible.'" (*People v. Coleman* (1985) 38 Cal.3d 69, 92 (*Coleman*), disapproved of on other grounds by *People v. Riccardi* (2012) 54 Cal.4th 758; *People v. Price* (1991) 1 Cal.4th 324, 416 ["expert may not under the guise of stating reasons for an opinion bring before the jury incompetent hearsay evidence"].)

Moreover, the trial court "'has considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay.' [Citation.] [And to] 'weigh the probative value of inadmissible evidence relied upon by an expert witness . . . against the risk that the jury might improperly consider it as independent proof of the facts recited therein.' *Coleman*, *supra*, 38 Cal.3d at p. 91." (*Gardeley, supra,* 14 Cal.4th at pp. 618–619.) While these hearsay issues often can be cured by a jury instruction that matters admitted through an expert go only to the basis of his opinion and should not be considered for their truth, sometimes such an instruction may not be sufficient protection, and the court may exclude the hearsay statement under section 352, finding that its "'irrelevance, unreliability, or potential for prejudice outweighs its proper probative value. *Coleman*, *supra*, 38 Cal.3d at pp. 91–93.'" (*People v. Bell, supra*, 40 Cal.4th at p. 608.)

Defendant contends, and the Attorney General does not dispute, that the prosecution had to prove specific intent as part of the charged crime—the intent to evade pursuing peace officers—and that defendant's statements to Dr. Romanoff and Dr. Romanoff's resulting opinions could be relevant as to whether defendant had the requisite specific intent at the time of the incident.[3] Defendant therefore claims that his expert

---

[3] Neither party contends that Dr. Romanoff could have testified that defendant lacked the capacity to form the requisite intent or that defendant had or did not have the

8

should have been allowed to testify to defendant's statements as non-hearsay statements that formed the basis for the expert's opinion rather than as statements admitted for their truth.

In excluding some of defendant's statements, the trial court relied heavily on *Bell, supra,* 40 Cal.4th at p. 582. In *Bell*, the trial court precluded the defense mental health expert from testifying to statements made by the defendant related to his actions and thoughts during the commission of the crimes, but admitted defendant's statements regarding his "'psychological background,' including childhood abuse." (*Id*. at pp. 606-607.) While the court found a limiting instruction sufficient for the latter topic, it excluded the former statements under section 352. (*Id*. at p. 608.) The Supreme Court affirmed, holding that "the court's weighing of prejudice and probativeness was not arbitrary or capricious [citation]," and noting that, while "the excluded statements were not particularly inflammatory, for the jury to separate their proper and improper uses would have been difficult." (*Id*. at p. 609.)

With respect to the first two categories of excluded statements regarding what defendant did and did not remember happening on January 6, 2012, we find it was not an abuse of discretion for the trial court to conclude that the danger of the jury considering these statements for their truth outweighed their probative value, particularly since Dr. Romanoff's report does not appear to rely on these statements as the bases for his opinions. Indeed, Dr. Romanoff noted that defendant's lack of recollection about the events of January 6, 2012, made his evaluation of defendant's mental state more difficult, but he was able to reach a conclusion about defendant's delusions based on the record "other than this somewhat unusual finding." While defendant asserts that a limiting instruction to the jury would have been preferable over exclusion, he provides no basis to find that the trial court's decision to exclude the statements in the first two categories

required mental state for the crime charged. (See Pen. Code, §§ 28 and 29 [barring such testimony].)

9

constitutes an abuse of discretion.[4]  Additionally, to the extent that defendant now contends that his statements about his lack of memory were offered to prove his state of mind (specifically, that he lacked the knowledge element of the offense), those statements could not provide a proper basis for Dr. Romanoff's testimony, which was limited to his expert opinion on defendant's mental state.  Defendant's statements would have been hearsay if offered for any other purpose.

Defendant's statements regarding his beliefs about the CIA, on the other hand, require a different analysis.  It is important to note that the expert report contains *no* statements by defendant that the CIA caused his actions on the night of the incident (which is consistent with defendant's claim that he did not remember his flight or the police pursuit).[5]  Rather, defendant's CIA-related statements to Dr. Romanoff included descriptions of how the CIA had treated him in the past, up to the weeks preceding January 6, 2012, as well as his belief that the CIA fabricated the incident and forwarded the police report to the police.  Thus, to the extent the court's ruling was focused on excluding defendant's statements regarding the day of the incident, none of defendant's statements regarding the CIA (or at most, only his statement about the CIA fabricating the incident) would be excluded.

However, at least one iteration of the court's ruling swept more broadly, also excluding "everything" defendant told the expert "regarding his background."  That could have encompassed all of defendant's CIA-related statements, although, as discussed further below, the court's focus during oral argument on *Bell* and the unduly prejudicial

---

[4]     Defendant's citation to *People v. Coddington* (2000) 23 Cal.4th 529, and *Cortes*, *supra*, 192 Cal.App.4th 873, as examples of cases where similar testimony was admitted is inapposite, as neither case raises the hearsay issues we address here.  We also reject defendant's contention that the trial court abused its discretion by conditioning the admissibility of defendant's statements on defendant's decision to testify.

[5]     Thus, to the extent defendant's reply purports to "paraphrase" defendant's statements to Dr. Romanoff as including the statement "I was being chased by CIA people that night," that assertion is without support.

effect of statements about the day of the incident makes it appear likely that many of defendant's statements about his past CIA hallucinations would ultimately have been admitted.

Assuming, however, that all of defendant's CIA-related statements would have been excluded as statements by defendant "regarding his background," we agree with defendant that this exclusion was erroneous. As defendant points out, there is little danger the jury would have considered his statements that the CIA constantly followed defendant and set him up for the truth of the matter, nor were they offered for that purpose. As such, these statements should have been admitted for their nonhearsay probative value. (See Evid. Code, § 1200(a).) However, as discussed below, we conclude that any error in excluding these statements was harmless.

*B. Any Error Was Harmless*

When a trial court "misapplies Evidence Code section 352 to exclude defense evidence . . . the applicable standard of prejudice is that for state law error, as set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836." (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) Thus, the court will "reverse only if it also finds a reasonable probability the error affected the verdict adversely to defendant. [Citations.]" (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1089; see also *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.)

We find no such prejudice here. In particular, the prosecution introduced substantial evidence tending to prove that defendant had the requisite intent to evade the police at the time of the incident, including defendant's high-speed flight from a marked police car using both sirens and lights and his statement when arrested that he was running because "I don't like being messed with by cops or by police." Further, while defense counsel decided not to call Dr. Romanoff at trial, the court reiterated several times its intent to allow Dr. Romanoff to testify as to his opinion and as to all of the bases for that opinion that remained admissible. Thus, Dr. Romanoff remained free to express his opinion as to defendant's mental state and to testify regarding his review of defendant's records and defendant's past mental history, his observations of defendant,

11

the remainder of his interview with defendant and his wife, and his understanding about how certain types of mental disorders may affect a person.[6] And even the most restrictive iteration of the court's ruling expressly permitted testimony on defendant's "past hallucinations" (which were presumably CIA-based). As such, Dr. Romanoff was not precluded from offering his opinion as a result of the court's ruling, and defendant cannot show that the additional testimony relating defendant's statements about the CIA would have affected the verdict. Given the court's evolving articulation of its ruling in this complex area of the law, it is far from clear that the court would have ultimately excluded all, or even most, of Dr. Romanoff's testimony regarding defendant's CIA delusions, had he testified. [7]

Finally, we reject defendant's contention that his federal constitutional rights to present a defense were violated by the exclusion of these portions of Dr. Romanoff's testimony. "'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence

---

[6] At oral argument, defense counsel suggested that the court's allowance of testimony as to how mental disorders "may affect a person" restricted Dr. Romanoff's testimony to mental states in general. Such a restrictive reading of the court's ruling is not supported by the remainder of the court's colloquy with counsel, including the court's statement that defendant's past mental state would be relevant to his mental state at another fixed point in time (including the time of the incident) and the court's allowance of Dr. Romanoff's testimony in other areas, as detailed above. Moreover, excluding all expert testimony about defendant's mental state is precisely the approach that was disapproved by the Court of Appeal in *Cortes*, *supra*, 192 Cal.App.4th 873, which was cited by the trial court during the same discussion.

[7] Even if all of defendant's statements regarding the CIA had been admitted, they would not necessarily lead a jury to conclude that defendant fled from the police as a result of a CIA-related delusion that night. Defendant did not tell Dr. Romanoff that the CIA was chasing him that night. In fact, the defendant stated that the events were "fabricated" by the CIA after the fact. Faced with these statements, Dr. Romanoff was left to speculate that it was "possible" that defendant was "preoccupied with a belief he was in danger, and was needing to flee from people who were in pursuit of him."

12

in the interests of orderly procedure and the avoidance of prejudice. [Citations.]'" (*Cudjo*, *supra*, 6 Cal.4th at 611.) As such, "the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution. . . ." (*People v. Marks* (2003) 31 Cal.4th 197, 226–227.) Nor do those rules impermissibly infringe on the accused's right to present a defense. (*People v. Jones* (1998) 17 Cal.4th 279, 305.)

## DISPOSITION

The judgment is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



COLLINS, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.


13