Filed 12/7/22  P. v. Bunner CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JERROD LEE BUNNER,<br><br>     Defendant and Appellant. | G060688<br><br>(Super. Ct. No. 18CF2542)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jacki C. Brown, Judge.  Reversed.

Matthew T. Tymann, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Seth Friedman and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Jerrod Lee Bunner appeals from a judgment after the jury convicted him of possessing controlled substances for sale. Bunner argues the trial court erred by allowing the prosecutor to amend the information and for the trial to proceed in his absence. Because we agree the court erred by allowing the trial to proceed in Bunner's absence and he was prejudiced, we need not address his other claim. We reverse the judgment.

FACTS

Late one evening, officers reported to a shopping center parking lot because a man was passed out in a parked car. Officer Patrick Marshall saw Bunner unconscious in the driver's seat slumped toward the steering wheel. Officers shined lights into the car and knocked on the window. Bunner slowly woke up, but he was sluggish and slow to respond. Marshall believed Bunner was under the influence of an opioid.

An officer took Bunner out of the car, and Marshall found a blue toiletry bag on the front passenger seat. The toiletry bag had plastic baggies that contained powdery and crystalline substances. Marshall believed it was cocaine and methamphetamine. He did not believe it was fentanyl because it was not prevalent at the time. Officers found a pay-owe sheet, a scale, two cell phones, plastic baggies, aluminum foil, over $2,483 in cash, and pills. Marshall believed the drugs were for sale.

A complaint and an amended complaint charged Bunner with possessing for sale heroin, cocaine, and methamphetamine and other offenses and allegations not relevant here. At the preliminary hearing, Marshall testified he believed the substances were heroin, cocaine, and methamphetamine. The parties stipulated to the same for purposes of the preliminary hearing. The trial court held Bunner to answer on all charges. An information charged Bunner with possessing for sale heroin, cocaine, and methamphetamine.

After the preliminary hearing, a forensic scientist tested the substances and determined they were fentanyl and methamphetamine. The prosecution filed an amended information charging Bunner with possessing for sale fentanyl and methamphetamine.

2

Bunner filed a motion to dismiss the possessing fentanyl for sale charge because the prosecution presented no evidence at the preliminary hearing the substance was fentanyl. Bunner added that had he known about the amendment, he would not have waived his right to cross-examine the forensic scientist concerning the substance. The prosecution filed opposition arguing it presented evidence at the preliminary hearing Bunner violated Health and Safety Code section 11351 and it "ma[de] no difference" whether it was heroin or fentanyl.

At a hearing, after counsel argued the motion, the court denied the motion. A third amended information, the operative complaint, included two charges, possessing fentanyl for sale (Health & Saf. Code, § 11351) and possessing methamphetamine for sale (Health & Saf. Code, § 11378).

On the day voir dire was to begin, out of the prospective jurors' presence, Bunner was disruptive and refused to sit down. The trial court discharged his bail and remanded him into custody (Pen. Code, § 1129, all further statutory references are to the Penal Code). That afternoon, the trial court asked Bunner's trial counsel whether he agreed to proceed in Bunner's absence and indicated he may return after booking. Counsel said, "I'm willing to go along with whatever the [c]ourt does." Jury selection proceeded without Bunner's presence.

The next day, the trial court stated it exonerated Bunner's bail and remanded him because of his disruptive behavior. The court added Bunner had not been transported to the courthouse and asked the bailiff to explain his absence. The bailiff said Bunner was not vaccinated for the coronavirus disease 2019 (COVID-19) and jail procedure required he quarantine for two weeks. The court added: "[T]he court did not place any burden on [Bunner's] custody status regarding COVID-19. His retention under quarantine is part of the jail procedure." The court turned to other matters.

The following day, without Bunner being present, Marshall and the forensic scientist testified. During Marshall's testimony, the prosecutor asked the trial court what

3

the legal authority was for Bunner's absence during the jury trial. The court cited to section 1129 and because Bunner was disruptive. The prosecutor asked the court to review section 1043 concerning a defendant's presence in criminal cases. After the prosecutor read a portion of that section, the court stated it had repeatedly ordered Bunner not to be disruptive. Two days later, the jury convicted him of both counts.

The following month, Bunner was in court for sentencing. The trial court sentenced Bunner to two years in jail.

DISCUSSION

"A criminal defendant's right to be personally present at trial is guaranteed under the federal Constitution by the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment. It is also required by section 15 of article I of the California Constitution and by sections 977 and 1043. [Citations.]" (*People v. Concepcion* (2008) 45 Cal.4th 77, 81 (*Concepcion*).) Such a defendant "clearly has a right to be present when witnesses testify at trial. [Citations.]" (*Id.* at p. 82; *United States v. Gagnon* (1985) 470 U.S. 522, 526.)

The right to be present is not absolute; a defendant may expressly or impliedly waive the right to be present. (*Concepcion, supra,* 45 Cal.4th at p. 82.) Consistent with the Sixth Amendment, a trial court may remove a defendant involuntarily for disrupting the trial proceedings. (*Illinois v. Allen* (1970) 397 U.S. 337, 343-344.) California law empowers the court to remove a defendant involuntarily and proceed with trial if the court warns the defendant he will be removed, but the defendant continues to disrupt the trial. (§ 1043, subd. (b)(1); *Concepcion, supra,* 45 Cal.4th at p. 82.) However, a defendant who is absented involuntarily under section 1043 may reclaim his right to be present at the trial as soon as he is willing to conduct himself consistently with the decorum and respect inherent in judicial proceedings. (§ 1043, subd. (c).)

Here, Bunner concedes the trial court was justified in removing him from voir dire because he was disruptive. The Attorney General acknowledges Bunner's

concession on this point. This order is not at issue.[1] What is at issue is the trial court's decision to proceed with trial when it learned Bunner had to quarantine in jail for 14 days because he was not vaccinated.

The Attorney General contends Bunner forfeited this contention by failing to object when he learned about the mandatory quarantine. We disagree.

"As a matter of both federal and state constitutional law, however, a defendant may validly waive his or her right to be present during a critical stage of the trial, provided the waiver is knowing, intelligent, and voluntary. [Citations.]" (*People v. Cunningham* (2015) 61 Cal.4th 609, 633.) Section 977, subdivision (b)(1), states inter alia "in all cases in which a felony is charged, the accused shall be physically present at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence." (See *People v. Mendoza* (2016) 62 Cal.4th 856, 898 (*Mendoza*) [under § 977, subd. (b)(1), defendant not permitted to waive presence during evidence].)

Here, Bunner did not personally and expressly waive his fundamental constitutional right to be present at trial. (*People v. Penunuri* (2018) 5 Cal.5th 126, 162; *People v. Collins* (2001) 26 Cal.4th 297, 308, citing *Brookhart v. Janis* (1966) 384 U.S. 1, 7-8.) Additionally, he could not waive his statutory right to be present for the presentation of the evidence. Thus, the Attorney General's forfeiture claim fails.

Bunner had a constitutional and statutory right to be present for the presentation of evidence. Although there is no dispute the trial court was justified in removing him from voir dire because he was disruptive, the court anticipated he would return after the booking process was complete to give him an opportunity to reclaim his right to be present. But that did not happen because Bunner had to quarantine.

---

[1] Thus, the Attorney General's reliance on *Terry v. State* (Ark. 1990) 796 S.W.2d 332, a case where the trial court properly removed defendant for disruptive behavior, is misplaced.

5

"A defendant's right to presence is 'fundamental to our system of justice and guaranteed by our Constitution.' [Citation.] Thus, a trial court should not 'summarily plung[e] ahead' with trial in a defendant's absence. [Citation.]" (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1209.) We fail to see how a continuance of a couple of weeks to allow Bunner to be present would have caused irreparable damage. The only witnesses were a local city police officer and a local county forensic scientist. Bunner's fundamental right to be present, if he could conduct himself in a manner consistent with the decorum that is essential in judicial proceedings, must take precedence over any scheduling concerns.

The Attorney General faults Bunner for not trying to reclaim his right to be present for trial. (See *People v. Banks* (2014) 59 Cal.4th 1113, 1181 [defendant's duty to reclaim right by moving to do so and demonstrating willingness to conduct himself with decorum], overruled on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) The Attorney General misses the mark. Bunner could not try to reclaim his right to be present because he was subject to a 14-day jail quarantine. Even had he tried, the only reasonable inference is Bunner would not have been transported. And testimony lasted just one day. The jury returned its verdicts on day four of Bunner's quarantine. Delaying the trial two weeks to allow Bunner the opportunity to reclaim his right to be present was not unduly burdensome.

Contrary to Bunner's contention, his absence was not a structural error requiring automatic reversal. An improper absence from a critical stage of the proceedings is subject to harmless error analysis. "Under the federal Constitution, error pertaining to a defendant's presence is evaluated under the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 23." (*People v. Davis* (2005) 36 Cal.4th 510, 532; accord, *Mendoza, supra,* 62 Cal.4th at

p. 902.)  Where the error is merely statutory, the reasonably probable standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, applies.  (*Mendoza, supra,* 62 Cal.4th at p. 902.)  Unfortunately, the Attorney General does not provide any harmless error analysis.

Here, we cannot conclude Bunner's absence from the majority of the trial was harmless beyond any reasonable doubt.  Bunner may have assisted counsel during the presentation of the prosecution's evidence.  The jury may have viewed Bunner more favorably had he been present in the courtroom.  And Bunner may have decided to testify in his own defense.  Marshall, an experienced officer trained in identifying narcotics, concluded Bunner possessed cocaine and heroin when in fact he possessed fentanyl.  It is possible Bunner thought he possessed a substance that was not illegal.  Clearly, we do not expect lawyers to litigate cases without the presence of their clients.  Based on the record before us, we conclude Bunner was prejudiced by his absence from trial.

### DISPOSITION

The judgment is reversed.


O'LEARY, P. J.

WE CONCUR:


MOTOIKE, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


7