**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALLEN BERGERUD,

      Petitioner - Appellant,

v.

JAMES FALK; THE ATTONREY
GENERAL OF THE STATE OF
COLORADO,

      Respondents - Appellees.

No. 15-1419
(D.C. No. 1:14-CV-02728-MSK)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **MATHESON,** and **BACHARACH**, Circuit Judges.

Allen Bergerud, a Colorado state prisoner proceeding pro se,[1] seeks a certificate of

appealability ("COA") to challenge the district court's denial of his 28 U.S.C. § 2254

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Although we liberally construe a pro se litigant's filings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), we may not "assume the role of advocate," *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotations omitted); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009), and we do not "fashion . . . arguments for him," *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

petition for a writ of habeas corpus. Exercising jurisdiction under 28 U.S.C. § 1291, we deny a COA and dismiss this matter.

## I.  BACKGROUND

### A. *Mr. Bergerud's Conviction*

Mr. Bergerud's first trial ended in a hung jury.  After a second trial, he was convicted of one count of first-degree murder, one count of second-degree murder, and two counts of first-degree assault on a police officer.  The State of Colorado presented evidence at the second trial that Mr. Bergerud shot and killed his ex-girlfriend and her male companion and fired shots at sheriff's deputies before they apprehended him.  Mr. Bergerud was sentenced to life imprisonment without parole.

During opening statements at the second trial, Mr. Bergerud's court-appointed attorney indicated the defense would endeavor to show Mr. Bergerud had not acted with deliberation in killing the two victims and was therefore not guilty of first-degree murder. His counsel stated, among other things, "Allen Bergerud was not thinking clearly that night.  In fact, he was so out of it, so hasty, so impulsive, that at times it becomes hard to even understand what happened out there."  ROA at 336 (quotations omitted).  The statement concluded as follows:  "He did not plan.  He did not reflect.  He did not consider.  He acted but he did not think.  And at the end of this case, [my co-counsel] and I will ask you to find him not guilty of charges that require intent and after deliberation." *Id.* (quotations omitted).

- 2 -

After the opening statement, Mr. Bergerud requested to speak with the state trial judge, who held an in camera meeting. Mr. Bergerud explained that he wanted to fire his attorneys because they refused to present a self-defense theory. He asked the court to appoint new counsel.

The state trial court held a series of in camera proceedings to investigate the conflict between Mr. Bergerud and his attorneys. Mr. Bergerud claimed the attorney who represented him at the first trial wrote him a letter encouraging him to present a self-defense theory. He complained that his then-current attorneys were "not listening to the information [he gave] them." ROA at 63 (quotations omitted). His attorneys did not comment on the disagreement but stated they did not intend to withdraw as Mr. Bergerud's attorneys. The court informed Mr. Bergerud that he was free to testify about his recollection of the events and that the court would give a self-defense jury instruction if Mr. Bergerud presented testimony of self-defense. Mr. Bergerud again requested substitute counsel.

The state trial court concluded Mr. Bergerud's disagreement with his attorneys was not a complete breakdown in communication, trial strategy was properly left in the hands of his attorneys, his request for new counsel was untimely, and appointing new counsel would delay the trial and inconvenience witnesses. The court gave Mr. Bergerud the option of either continuing with his attorneys or representing himself pro se. Mr. Bergerud elected to represent himself pro se so that he could present his self-defense theory.

Mr. Bergerud proceeded pro se, and the jury convicted him of one count of first-degree murder, one count of second-degree murder, and two counts of first-degree assault on a police officer. He appealed the conviction.

## B. *State Direct Appeal*

On appeal, Mr. Bergerud contended his attorney's opening statement and the state trial court's denial of his motion for new counsel violated his right to effective assistance of counsel under the Sixth Amendment and the Colorado Constitution. He also argued the state trial court deprived him of his due process right to present a defense. He asserted throughout his appellate briefs that the opening statement deprived him of his right to testify and the right to plead not guilty.

The Colorado Court of Appeals determined Mr. Bergerud's attorneys had effectively conceded his guilt to a lesser homicide offense by focusing solely on his impaired mental state, even though Mr. Bergerud wished to present a self-defense theory. The court concluded Mr. Bergerud's inability to present self-defense through counsel was a deprivation of his federal and state constitutional rights to effective assistance of counsel and warranted a remand for a new trial.

The Colorado Supreme Court granted certiorari and reversed the Court of Appeals. It concluded Mr. Bergerud's attorneys did not violate his right to plead not guilty, but further determined the record was unclear as to whether Mr. Bergerud's attorneys deprived him of his right to testify or failed to investigate possible defenses due to a complete breakdown in communications.

The Colorado Supreme Court remanded the case to the state trial court with directions to determine the following factual questions:

1. Was it Mr. Bergerud or his attorneys who caused the delay in bringing the conflict with his attorneys to the court's attention?

2. Did Mr. Bergerud's attorneys contradict or contravene the court's advisements concerning his right to testify; whether in their discussions with him they indicated that they would completely contradict his testimony were he to offer it or that they would otherwise persist in wholly undermining the believability of his testimony through their presentation of evidence?

3. Was Mr. Bergerud clear and persistent in his disagreement with his counsel or did he waffle in his desire to testify?

ROA at 118-19; *see People v. Bergerud*, 223 P.3d 686, 706-07 (Colo. 2010).

## C. *Remand and Second Direct Appeal*

The state trial court held a remand hearing and made the following findings of fact: (1) Mr. Bergerud was primarily responsible for the delay in bringing the disagreement with counsel to the court's attention; (2) his attorneys did not contradict the court's advisement concerning his right to testify or indicate they would have undermined or contradicted his testimony; and (3) Mr. Bergerud was clear and persistent in his desire to testify, but his attorneys thoroughly investigated the self-defense theory and properly concluded it was not viable.

The state trial court ultimately determined again that Mr. Bergerud was not entitled to substitute counsel. Mr. Bergerud appealed the state trial court's determination to the Colorado Court of Appeals, arguing the Colorado Supreme Court and the state trial

court improperly placed on him the burden of informing the state trial court about the conflict between him and his attorney. The Colorado Court of Appeals affirmed the state trial court's ruling on remand. Mr. Bergerud filed a petition for certiorari with the Colorado Supreme Court, raising similar arguments regarding the purportedly improperly placed burden. The Colorado Supreme Court denied the petition. Mr. Bergerud then filed a petition for certiorari with the United States Supreme Court, which was denied. He did not seek post-conviction relief.

## D. *Federal Habeas Proceedings*

Mr. Bergerud filed a timely § 2254 petition asserting two claims in the United States District Court for the District of Colorado. The first claim was that "the Colorado Supreme Court erroneously found that Mr. Bergerud did not have a right to argue innocence." In particular, Mr. Bergerud asserted he was deprived of his right to plead not guilty, right to effective assistance of counsel, and right to testify. The second claim was that the Colorado Supreme Court's remand instructions improperly placed the burden on Mr. Bergerud to inform the state trial court of the conflict between Mr. Bergerud and his appointed counsel concerning the theory of self-defense. The district court denied the petition and declined to grant a COA.

## II. **DISCUSSION**

### A. *Standard of Review and Legal Background*

A COA is necessary to appeal from a district court's denial of a § 2254 habeas petition. 28 U.S.C. § 2253(c)(1)(A); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-36

- 6 -

(2003). To obtain a COA, Mr. Bergerud must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). He may do so by "showing that reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (quotations omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs federal habeas review of state court decisions. *See* 28 U.S.C. § 2254. When, as here, a state court has decided the petitioner's claims on the merits, we make the COA determination by "look[ing] to the District Court's application of AEDPA to petitioner's constitutional claims and ask[ing] whether that resolution was debatable among jurists of reason." *Miller-El*, 537 U.S. at 336. AEDPA provides that federal courts cannot grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

## B. *Analysis*

Mr. Bergerud makes three arguments to obtain a COA. He asserts reasonable jurists could debate the district court's conclusions regarding (1) his right to plead not guilty as articulated in *Brookhart v. Janus*, 384 U.S. 1 (1966), (2) his Sixth Amendment

right to freely testify as articulated in *Rock v. Arkansas*, 483 U.S. 44 (1987), and (3) the Colorado Supreme Court's remand instructions that required him to show he timely brought the conflict between him and his trial counsel to the attention of the state trial court. We examine each argument in turn, conclude no reasonable jurist could debate the correctness of the district court's rulings, deny the application for a COA, and dismiss the matter.

1. **Right to Plead Not Guilty**

Mr. Bergerud first contends his trial counsel conceded his guilt during the opening statement of the second trial in violation of the Sixth and Fourteenth Amendments. He cites *Brookhart* and *Florida v. Nixon*, 543 U.S. 175 (2004). We examine his arguments in turn.

a. *Brookhart v. Janus*, 384 U.S. 1 (1966)

Mr. Bergerud asserts his defense counsel's opening statement violated the *Brookhart* principle that a defense counsel cannot waive a criminal defendant's constitutional rights without the defendant's knowing and intelligent waiver.

In *Brookhart*, a defense attorney stipulated without the defendant's consent to a truncated trial in which "the [attorney] knowingly agreed that the State need make only a prima facie showing of guilt and that he would neither offer evidence on [defendant's] behalf nor cross-examine any of the State's witnesses." 384 U.S. at 7. The Court held the defendant "did not intelligently and knowingly agree to be tried in a proceeding which was the equivalent of a guilty plea and in which he would not have the right to be

- 8 -

confronted with and cross-examine the witnesses against him." *Id.* As a result, the defendant could not exercise his "constitutional right to plead not guilty and have a trial in which he [could] confront and cross-examine the witnesses against him." *Id.* The Court's opinion in *Brookhart* does not state which constitutional amendment provides the right to plead not guilty. The concurring opinion states the attorney's conduct was a violation of the Fourteenth Amendment's Due Process Clause. *Id.* at 9 (Harlan, J., concurring).

The district court in this case determined *Brookhart* is distinguishable because Mr. Bergerud's attorneys did not stipulate to a truncated trial, suggest the prosecution would not be required to prove guilt beyond a reasonable doubt, or indicate that they would decline to cross-examine the State's witnesses. In addition, the district court found reasonable the Colorado Supreme Court's determination that the opening statement neither conceded guilt nor excused the State from meeting its burden of proof for each element of the crimes charged.

For substantially the same reasons, we agree with the district court. Unlike the attorney in *Brookhart*, Mr. Bergerud's attorney did not decline to cross-examine the State's witnesses or to offer evidence on Mr. Bergerud's behalf. Nor did his attorney excuse the State from proving each element of the crime beyond a reasonable doubt. Rather, she said in the opening statement that the jury would hear evidence regarding Mr. Bergerud's mental state at the time of the murders. And she closed the statement by saying, "[A]t the end of this case [my co-counsel] and I will ask you to find him *not*

*guilty* of charges that require intent and after deliberation." ROA at 336 (emphasis added). We agree with the district court and the Colorado Supreme Court that the opening statement did not amount to a guilty plea, which means Mr. Bergerud did not waive his right to plead not guilty, nor do we see any basis to conclude the Colorado Supreme Court unreasonably applied clearly established Supreme Court law.

   b. *Florida v. Nixon*, 543 U.S. 175 (2004)

Mr. Bergerud next argues the Sixth and Fourteenth Amendments "require trial counsel to consult with a defendant regarding matters of 'overarching defense strategy.'" Aplt. Br. at 9 (quoting *Nixon*, 543 U.S. at 187). In *Nixon*, the Supreme Court stated, "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Nixon*, 543 U.S. at 187 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

Mr. Bergerud's argument fails on several grounds. First, he points to nothing in the record showing his lawyers failed to consult with him. Second, in *Nixon*, the Court did not analyze a stand-alone right for a criminal defendant to be consulted by his attorney. Rather, the Court addressed the claim in the broader context of ineffective assistance of counsel under *Strickland*. *Id.* at 187-92. Third, if we construe Mr. Bergerud's argument as alleging ineffective assistance of counsel, he must show his "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and "that the deficient performance prejudiced the defense," *id.*at 687. Mr. Bergerud fails to address these elements and thus has failed to make a

- 10 -

substantial showing of a violation of a constitutional right to obtain a COA. 28 U.S.C. § 2253(c)(2). Finally, he has not shown the Colorado Supreme Court unreasonably applied clearly established Supreme Court law.

*   *   *   *

In sum, Mr. Bergerud has not shown "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (quotations omitted). We therefore deny a COA on the issue of whether the opening statement and the state trial court's related rulings deprived Mr. Bergerud of the constitutional right to plead not guilty.[2]

2. **Right to Freely Testify**

Mr. Bergerud contends reasonable jurists could debate the district court's ruling that he was not deprived of his constitutional right to testify in his own defense. He asserts that his attorney's opening statement referencing his mental state undercut his ability to present his own testimony. He argues the opening statement contravenes *Brookhart*, but he does not specifically explain how *Brookhart* applies to this issue.

He also argues the opening statement violated the principle found in *Rock* that the Sixth Amendment Compulsory Process Clause grants the defendant the "right to present

---

[2] The Colorado Court of Appeals acknowledged that the U.S. Supreme Court had not squarely addressed this issue. *People v. Bergerud*, 203 P.3d 579, 583 (Colo. App. 2008).

- 11 -

his own version of events in his own words." 483 U.S. at 52. In *Rock*, the petitioner was charged with manslaughter for shooting and killing her husband. *Id.* at 46. During the initial investigation, she could not remember the details of the shooting. *Id.* She then underwent hypnosis and sought to offer at trial refreshed testimony of additional details about the shooting. *Id.* at 46-47. The Supreme Court of Arkansas agreed with the Arkansas trial court that the testimony was inadmissible based on a per se rule excluding "hypnotically refreshed testimony." *Id.* at 49. The United States Supreme Court concluded the per se exclusion violated the petitioner's Sixth Amendment right to testify on her own behalf. *Id.* at 62.

The Colorado Supreme Court concluded the opening statement by itself did not violate Mr. Bergerud's right to testify because it did not preclude him from testifying about self-defense. It remanded the case to the state trial court with instructions to determine whether Mr. Bergerud would have "meaningfully retained his right to testify" if his attorneys continued to represent him. *Bergerud*, 223 P.3d at 707. On remand, the state trial court determined the attorneys "comprehensively investigated the viability of [Mr. Bergerud's] self-defense claim and properly concluded that such a defense was not viable." ROA at 121. In addition, the state trial court found no evidence that the attorneys would have attempted to undermine Mr. Bergerud's testimony regarding self-defense.

The district court determined the state trial court and the Colorado Supreme Court's conclusion that Mr. Bergerud retained his right to testify was not contrary to or

- 12 -

an unreasonable application of Supreme Court law because the courts "struck a reasonable balance between Applicant's constitutional right to testify and his right to the effective assistance of counsel." *Bergerud v. Falk*, No. 14-CV-02728-MSK, 2015 WL 5770946, at *13 (D. Colo. Oct. 2, 2015). We agree. The opening statement did not preclude Mr. Bergerud from later testifying about self-defense. And there is no indication his attorneys planned to undermine his testimony during trial. Unlike the situation in *Rock*, the state trial court did not foreclose Mr. Bergerud's ability to testify on his own behalf. Mr. Bergerud has failed to show the Colorado Supreme Court unreasonably applied clearly established Supreme Court law on this issue.

We conclude Mr. Bergerud has failed to show reasonable jurists could debate the correctness of the district court's ruling, and we deny a COA on the issue.

### 3. **Remand Instructions**

Mr. Bergerud argues it is debatable whether the Colorado Supreme Court improperly placed on him the onus of notifying the state trial court about his disagreement with his attorneys. He asserts the Colorado Supreme Court's remand instructions contravened *Holloway v. Arkansas*, 435 U.S. 475 (1978), in which the Supreme Court concluded an Arkansas trial court's requirement that one attorney represent three codefendants despite a conflict of interest deprived the defendants of the Sixth Amendment right to effective assistance of counsel. 435 U.S. at 484.

In *Holloway*, a defense attorney's representation of multiple defendants created a conflict of interest. 435 U.S. at 476-77. The Supreme Court recognized that "defense

- 13 -

attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Id.* at 485-86. Based on *Holloway*, Mr. Bergerud contends his counsel had "an obligation to immediately notify the court" of the conflict. Aplt. Br. at 15.

Mr. Bergerud does not explain how the remand instructions violated a constitutional right. In *Holloway*, the Supreme Court did not establish a constitutional right regarding a defense counsel's duty to inform the court of a conflict. Instead, the Court addressed the defense counsel's duty in the context of a claim of ineffective assistance of counsel. *Id.* at 477-78. Mr. Bergerud has not framed his argument as a claim of ineffective assistance of counsel. And even if he had, he has failed to apply the *Strickland* test. He has therefore failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He has not shown the Colorado Supreme Court unreasonably applied clearly established Supreme Court law. Reasonable jurists could not debate the district court's rejection of this claim. We therefore deny a COA on the issue.

## III. **CONCLUSION**

For the foregoing reasons, we deny Mr. Bergerud's application for a COA and dismiss this matter.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

- 14 -