**[Cite as *State v. Summers*, 2024-Ohio-5200.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                              |     | JUDGES:                       |
| ---------------------------- | --- | ----------------------------- |
| STATE OF OHIO                | :   | Hon. W. Scott Gwin, P.J.      |
|                              | :   | Hon. John W. Wise, J.         |
| Plaintiff-Appellee           | :   | Hon. Craig R. Baldwin, J.     |
|                              | :   |                               |
| -vs-                         | :   |                               |
|                              | :   | Case No. 2024 CA 00013        |
| KRISTIN SUMMERS              | :   |                               |
|                              | :   |                               |
| Defendant-Appellant          | :   | OPINION                       |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court of Common Pleas, Case No. 2023CR00449

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 29, 2024

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER A. REAMER
Assistant Prosecutor
239 W. Main Street, Ste. 101
Lancaster, OH 43130

For Defendant-Appellant

FELICE HARRIS
Harris Law Firm, LLC
6480 E. Main Street, Ste. A
Reynoldsburg, OH 43068

*Gwin, P.J.*

**{¶1}**  Defendant-appellant Kristin Danielle Summers ["Summers"] appeals her conviction and sentence after a no contest plea in the Fairfield County Court of Common Pleas.

### *Facts and Procedural History*

**{¶2}**  On August 30, 2023, Deputy Joshua Watson ["Watson], of the Licking County Sherriff's Office, was traveling along Carroll Northern Road in uniform and in a marked cruiser, but off-duty, and on his way to his home in Fairfield County when he observed a red Jeep. Supp.T. at 20-25.[1] As the Jeep was traveling southbound on Carroll Northern Road, he observed it travel "entirely over the yellow line," "completely southbound in the north bound lanes," for "no more than 10 seconds." Supp.T. at 26; 29. As he was off duty, Watson's cruiser camera, radio, computer and body camera had been turned off. Id. at 26-27. Because the cruiser camera had been turned off, it did not record the previous thirty seconds, therefore, the Jeep's crossing of the double yellow lines was not captured on video. Id. at 29-30. Watson reached across his cruiser to turn his cruiser camera on and grab his body camera to put it on his chest. Id. at 27. Watson observed the red Jeep again cross the yellow dividing line and also the right fog line. Id. at 27-29. State's Exhibit 2 is a still photograph taken from the cruiser camera of the Jeep with the driver's side tires left of the striped and solid yellow center lines. Id. at 35.

**{¶3}**  At one point, Watson believed that there was going to be a head-on collision. Supp.T. at 39. Believing the Jeep posed a danger to other motorists, Watson initiated a traffic stop of the Jeep. Id. at 27. Watson observed the Jeep drive on the center

---

[1] For clarity, the transcript of Summers' suppression hearing will be referred to as "Supp.T.__" signifying the page number.

line, cross the fog line and "go nearly completely into a ditch" while pulling over. Id. at 39. The stop was recorded on the cruiser's camera. State's Exhibit 4; Supp.T. at 36; 40. Watson asked dispatch to notify the Fairfield County Sheriff's office and/or the Ohio State Highway Patrol to assist. Id. at 41. Watson's body camera captured him asking for assistance from Fairfield County before he got out of his cruiser to approach Summers' Jeep. Supp.T. at 48; State's Exhibit 5.

{¶4} As he spoke with Summers, who was the sole occupant of the red Jeep, Watson detected an odor of an alcoholic beverage, and observed her glassy and bloodshot eyes. Supp.T. at 41. Watson was also able to detect slurred speech from Summers. Id. at 54. Five minutes into the stop, Watson was informed by LEADS and dispatch that Summers had four driver's license suspensions. Id. at 42-43; 50-51; State's Exhibit 3. Because an OVI investigation needed to be done, Watson turned the matter over to Fairfield County. Id. at 44; 54.

{¶5} Trooper Tyler Holcomb ["Holcomb"] of the Ohio State Highway Patrol arrived on scene approximately sixteen minutes after the initial traffic stop. Supp.T. at 53-54; 71-72. Holcomb spoke to Watson. Id. at 76. Watson informed Holcomb that he smelled a sweet odor of an alcoholic beverage, observed bloodshot, glassy eyes, and also found Summers' speech to be slurred. Id. Watson further informed Holcomb of Summers' driver's license suspensions. Holcomb then approached the passenger side of the Jeep, where he noticed a strong odor of alcoholic beverage and observed Summers to have bloodshot, glassy eyes. Id. at 79. Through his interaction with Summers, Holcomb also noticed Summers' speech was slurred. Id. Holcomb was able to see in plain view an empty bottle of Chardonnay in a metal bin beneath the glove box inside the Jeep. Id.

{¶6} Summers refused field sobriety tests at the scene and, after Holcomb discovered she had two prior felony OVI's, he decided to "get a blood warrant." Supp.T. at 87. Holcomb subsequently completed an affidavit and obtained a warrant for Summers' blood, which was signed by the trial judge. Id. at 89-91; State's Exhibit 6.

{¶7} On September 7, 2023, Summers was indicted on one count of Operating a Vehicle Under the Influence of Alcohol ["OVI"], in violation of R.C. 4511.19(A)(1)(a) / (e), a felony of the third degree based upon a prior felony OVI conviction.

{¶8} On October 5, 2023, Summers filed a Motion to Suppress. [Docket Entry No. 29].

{¶9} On October 12, 2023, a superseding indictment was filed charging Summers with Count 1, OVI in violation of R.C. 4511.19(A)(1(F) / (G)(1)(e), a felony of the third degree based on a prior felony OVI conviction and, in Count 2 with OVI in violation of 4511.19(A)(2)(a) / (b) / (G)(1)(e), a felony of the third degree based on a prior felony OVI conviction. Both Count 1 and Count 2 contained repeat offender specifications in violation of R.C. 2941.1413(A), alleging that within twenty years Summers had five or more previous OVI convictions; and a specification pursuant to R.C. 2941.1417(A) alleging that the red Jeep was contraband. [Docket Entry No. 34].

{¶10} An evidentiary hearing on Summers' motion to suppress was held on February 7, 2024. At the conclusion of the hearing, the trial judge denied the motion. Supp.T. at 107-113.

{¶11} On March 20, 2024, a change of plea hearing took place. After giving Summers's attorney the opportunity to speak to Summers concerning a sentencing offer by the state if she would agree to plead "guilty," instead of "no contest," the trial judge

explained to Summers that there was no plea agreement or sentencing agreement reached in this case. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 10. He further told Summers,

> How I would sentence, I don't really know. I'm going to hear from all sides and make a fair and reasonable determination. And so, is that how you would like to proceed?

T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 10. Summers told the judge that she wanted to proceed with her "no contest" plea. Id.

{¶12} Summers told the trial judge that she understood the elements of the crimes and the specifications. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 12-17. The trial judge informed Summers of the maximum penalties for the underlying charge and the specification. Id. at 18. The trial judge also advised Summers of his ability to impose consecutive sentences. Id. at 19 - 20. The trial judge informed Summers that the sentence on the specification was a mandatory 1, 2, 3, 4- or 5-years consecutive to the sentence on the underlying offense. Id. at 20. Summers was advised about post-release control. Id. at 20-22.

{¶13} The trial judge explained to Summers her right to a jury trial. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 22. The trial judge further explained Summers' right to the confrontation of witnesses against her; that the state must prove her guilt beyond a reasonable doubt at trial; that she had the right to subpoena witnesses on her behalf, and that she cannot be compelled to testify against herself. Id. at 22-23. Summers acknowledged she understood her rights, the charges, that no plea agreement or sentencing agreement was reached by the prosecutor and her defense counsel, the

maximum penalties, and the specific constitutional rights she was waving with the plea. Id.

**{¶14}** Summers signed, via video, a written "Waiver Upon Plea of Guilty / No Contest" form explaining her rights, the charges and the penalties in open court. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 24 – 26; Docket Entry No. 80.

**{¶15}** Summers pled "no contest" to both counts of OVI, felonies of the third degree, and the first specification to both counts. The state dismissed the second specification to both counts as the vehicle was previously released to the lienholder. The trial judge accepted Summers' no contest plea. The case then proceeded to sentencing.

**{¶16}** The trial judge found the sentences merge and that the state elected to proceed to sentencing on Count 1 and the attendant specification. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 18; 35.

**{¶17}** The trial judge sentenced Summers to two years mandatory on the repeat offender specification to Count 1, consecutive to a twenty-four-month sentence on the OVI. Id. at 35. Both the sentence on Count 1 and the sentence on the specification to Count 1 were ordered to run consecutive to the thirty-month sentence imposed in Franklin County Court of Common Pleas, Case Number 19 CR -301329. Id.

*Assignment of Error*

**{¶18}** Summers raises one Assignment of Error,

**{¶19}** "I. KRISTIN SUMMERS' PLEA WAS NOT KNOWINGLY INTELLIGENTLY, AND VOLUNTARILY ENTERED PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

*Law and Analysis*

{¶20} Summers does not allege that the trial judge failed to carefully adhered to Criminal Rule 11, and strictly comply with all of the requirements of Criminal Rule 11 before accepting her no contest plea. Nor does Summers dispute that the trial judge conducted a complete and thorough colloquy. Summers further does not allege that she did not understand her rights, the charges, the written change of plea form, the maximum penalties, and the specific constitutional rights she was waving with the plea. Nor does Summers challenge the trial judge's ruling on her motion to suppress.

{¶21} Instead, Summers contends that the state offered to recommend a one-year mandatory sentence on the specification to Count 1 of the Indictment in exchange for a plea of guilty, thereby waiving her right to appeal the trial judge's ruling on her motion to suppress. Summers argues that her trial counsel advised her to reject the offer. She claims counsel's advice fell below an objective standard of reasonableness given this Court's standard of review and this Court's historical rulings on the suppression issues.

{¶22} The gravamen of Summers' claim is that her trial attorney convinced her to reject a plea offer that was more favorable than her ultimate sentence when he should have known an appeal of the motion to suppress would not succeed. Summers argument is necessarily premised upon an assumption that the trial judge's sentence is based upon Summers' decision to plead "no contest" and appeal his ruling on her motion to suppress.

**Standard of Review**

{¶23} Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The two-prong

ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington,* 466 U.S. 668 (1984), applies, with modification, to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill,* 474 U.S. at 58. A defendant who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that,

> [T]here is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), *that the court would have accepted its terms*, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (emphasis added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *See, Missouri v. Frye*, 566 U.S. 134(2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012).

**{¶24}** The Court in *Lafler*, recognized,

> It is, of course, true that defendants have "no right to be offered a plea ... nor a federal right that the judge accept it." *Frye,* post, at 1410, 132 S.Ct. 1399...If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise.

566 U.S. at 168. In other words, if the trial judge chooses to reject the terms of the state's

plea or sentencing offer that a defendant has accepted and, instead, chooses to sentence the defendant to a harsher sentence, the defendant cannot demonstrate that counsel's performance was constitutionally deficient during plea negotiations.

**Issue for appellate review:** *Whether the record demonstrates a reasonable probability that Summers would have pled "guilty," the trial judge would have sentenced her in accordance with the state's recommendation, and the terms would have been less severe than under the judgment and sentence that in fact were imposed, but for the advice of her attorney.*

### *The plea agreement*

{¶25}   In a nutshell, the offer by the state was that, in exchange for a plea of "guilty" rather than "no contest," the state would recommend that Summers receive a sentence of thirty-six months on the underlying OVI charge and one year on the repeat offender specification, and would not oppose judicial release. Supp.T. at 5. The trial judge sentenced Summers to two years mandatory on the repeat offender specification to Count 1, consecutive to a twenty-four-month sentence on the OVI charge. T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 35. The aggregate sentence is the same, i.e., forty-eight months. The sole difference is that under the sentencing recommendation only 12 months are mandatory, while under the trial judge's sentence 24 months are mandatory. Summers claims that she was prejudiced because under the offer she could apply for judicial release after sixteen months and the state would not oppose her motion, whereas under her sentence she must wait to apply for judicial release an additional eight months. [Appellant's brief at 6; 21].

### *Lafler v. Cooper is distinguishable from Summers' case*

{¶26} In *Lafler*, a favorable plea offer was reported to the client and rejected on the advice of counsel, who advised the defendant that the state could not prove intent because the victim was shot below the waist, even though the defendant shot the victim three times and missed her head once. The defendant took the case to trial and was convicted, after which he received a sentence more than three times higher than the plea offer.

{¶27} Unlike the case at bar, Defense counsel's deficient performance was stipulated by the prosecution and the state in *Lafler.* 566 U.S. at 160, 174. The issue of deficient performance was not before the Court and was specifically not addressed. In fact, the Court declared, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." Id. at 174.

{¶28} *Lafler* is further distinguishable from the case at bar because in *Lafler,* the record contained evidence that Lafler had earlier admitted guilt and expressed a willingness to accept the plea offer. 566 U.S. at 161, 171. Unlike *Lafler*, the record does not show that Summers would have pled "guilty" but for counsel's advice. We find no evidence in the record that Summers plea was based upon a representation from her attorney that she would prevail on appeal of the denial of her motion to suppress.

### *Summers was aware of the plea offer and the consequences of rejecting it*

{¶29} During a status conference hearing, defense counsel indicated that Summers would plead guilty if no additional time beyond the thirty months imposed in the Franklin County case was imposed in the present case. T. *Status Conference,* Feb. 6, 2024 at 7-8. The judge indicated that he is "not willing to take that off the table. So, I'm not sure what I would do." Id. at 8. The judge further indicated that "having a motion to

suppress hearing is nothing because what's important to me is that justice is served." Id. The judge went on to say, "Could something happen that I say, you know what, I'll do concurrent sentences? I suppose that's a possibility, but generally speaking a person has to answer independently with this Court if they've got something going on in another court." Id. at 9. Trial counsel told the judge in reference to the motion to suppress, "And, I'm not saying we're going to be successful, but I think we have a colorable argument." To which the trial judge stated, "Yeah, okay, Definitely." Id. at 10.

**{¶30}** Defense counsel explained to the judge that the reason expressed for Summers' reluctance to plead guilty in exchange for the state's recommendation was that Summers did not want to agree with the state's recommendation that her sentence run consecutive to the sentence in the Franklin County case. T. *Status Conference,* Feb. 6, 2024 at 10-12.

**{¶31}** The evidence fully supports the conclusion that Summers weighed the advice of her attorney, and made the ultimate decision about whether to enter into the plea agreement. In *Florida v. Nixon*, the United State Supreme Court made the following observation,

> A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Wainwright v.* Sykes, 433 U.S. 72, 93, n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

\* \* \*

While a guilty plea may be tactically advantageous for the defendant, [*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)], at 240, 89 S.Ct. 1709, the plea is not simply a strategic choice; it is "itself a conviction," id., at 242, 89 S.Ct. 1709, and the high stakes for the defendant require "the utmost solicitude," id., at 243, 89 S.Ct. 1709. Accordingly, counsel lacks authority to consent to a guilty plea on a client's behalf, *Brookhart v. Janis*, 384 U.S. 1, 6–7, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); moreover, a defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid, *Boykin*, 395 U.S., at 242, 89 S.Ct. 1709.

534 U.S. 175, 187–188 (2004).

**{¶32}** In the case at bar, the record establishes that counsel and the trial judge each made sure that Summers was aware of the state's plea offer, that she was aware of the penalties she was facing, and she was aware of the options that were available to her.

***Summers is unable to demonstrate prejudice because there is no evidence that the trial judge would sentence Summers to one-year on the repeat offender specification, or that he would grant judicial release at a specific time if she pled "guilty."***

**{¶33}** The fact that the state would recommend a one-year sentence on the repeat offender specification is not a promise that the judge will sentence her to one year. The fact that Summers could apply for judicial release earlier under the plea offer is not a guarantee by the trial judge that he would grant judicial release at that, or any other time.

Nothing in the record suggests that the trial judge actively participated in the plea recommendation offered by the state. Further, Summers points to no evidence in the record that the trial judge based his decision to sentence Summers to a two-year mandatory sentence upon her decision to plead "no contest" and preserve her right to appeal the judge's ruling on her motion to suppress.

{¶34} It is well settled that the terms of a plea agreement do not bind the discretion of the trial court. *State v. Pettiford*, 2002-Ohio-1914 (12th Dist.); *State v. Felder,* 2018-Ohio-826, ¶21(5th Dist.). Crim.R. 11 does not anticipate that punishment will be the result of a successful bargain because sentencing is determined expressly either by statute or rests within the sound discretion of the trial court. *State v. Mathews*, 8 Ohio App.3d 145, 146, (10th Dist. 1982). Simply stated, final judgment on acceptance of a plea agreement and sentencing rests with the discretion of the trial court. *State v. Fraternal Order of Eagles, Aerie No. 1224*, 2018-Ohio-548, ¶6 (2018); *State ex rel. Duran v. Kelsey*, 2005-Ohio-3674, ¶ 6, *quoting State v. Buchanan*, 2003-Ohio-4772, ¶ 13 (5th Dist.), *quoting State v. Pettiford,* at *3.

{¶35} There is no evidence contained in the record that the trial judge ever promised Summers, the prosecutor, or anyone else that he would sentence Summers to one-year mandatory on the repeat offender specification to Count 1, or the he would grant judicial release to Summers at an earlier time if she agreed to plead "guilty" as opposed to "no contest." *See, Change of Plea and Sentencing*, Mar. 20, 2024 at 37.

{¶36} During the sentencing hearing, the trial judge told Summers,

> And so, the way I have fashioned this, it is - - of course, you can't get
>
> judicial release during the mandatory time, but it is possible to get judicial

release during those following two years…And I am going to look at the ISR which is the institutional summary report and make a determination as to if Ms. Summers is taking full advantage of the programming at the institution and not causing any problems. I don't think you will.

T. *Change of Plea and Sentencing*, Mar. 20, 2024 at 37. Accordingly, the judge clearly has indicated that he will place more weight on Summers institutional record than the fact the state would not oppose judicial release. Thus, the value of the state's non-opposition is entirely speculative.

{¶37} Summers received no greater sentence under the terms of the plea offer than she did pursuant to the sentence imposed. The aggregate sentence remained forty-eight months. Only her ability to *apply* for judicial release was different. Without evidence that the trial judge would accept the state's sentencing recommendation and sentence Summers to one year on the repeat offender specification if she pled "guilty" as opposed to "no contest," and that he would grant Summers judicial release at the earlier time, any prejudice to Summers by the rejection of the plea offer is purely speculative.

## Conclusion

{¶38} The record establishes that Summers was aware of the plea offer made by the state and understood the options available to her, and the penalties she was facing. The record makes clear that Summers weighed the advice of her attorney, and made the ultimate decision about whether to enter into the plea agreement. Further, the record contains no evidence that the trial judge agreed to sentence Summers in accordance with the state's recommendation, or grant judicial release to Summers at any specific point in time.

{¶39}  Therefore, Summers has failed to demonstrate a reasonable probability that counsel's performance was constitutionally deficient during plea negotiations.

{¶40}  Summers' sole Assignment of Error is overruled.

{¶41}  The judgment of the Fairfield County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur